**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DENNY MICKLE,

Petitioner,

v.

ROBERT L. AYERS, Acting Warden of California State Prison at San Quentin

Respondent.
_______________________________________/

No. C 92-2951 TEH

**ORDER GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Respondent has filed a motion for summary judgment requesting dismissal of twenty-eight claims contained in petitioner's habeas petition. The parties agree that these claims may be resolved as a matter of law without an evidentiary hearing. Petitioner opposes respondent's request. Pursuant to Civil Local Rules 7-1(b) and 7-6, the court finds that respondent's motion is appropriate for submission on the papers without oral argument. Based on the record presented to date, the court finds and orders as follows.

**FACTUAL BACKGROUND**

The following recitation of the factual background of this case is based, in relevant part, on

the Supreme Court of California's opinion disposing of petitioner's direct appeal, *People v. Mickle*, 54 Cal. 3d 140 (1991). The state court's factual determinations are presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1).

In 1986, a jury in San Mateo County Superior Court sentenced petitioner to death following a conviction of first-degree murder and arson. The jury also found true a special circumstance finding that he committed the murder while engaged in a lewd and lascivious act on a minor. Evidence at trial established that in February 1983, petitioner took up residence with the victim, twelve-year-old Lashan K., and her parents, Darrell and Sally K., in unit ten of the Mission Bell Motel in San Francisco. The motel was occupied primarily by permanent residents.

On February 24, the day of the crimes, Lashan's parents left the motel at noon and drove to Oakland to visit Darrell's grandmother. That afternoon, Sally called petitioner to let him know that a woman who worked at Lashan's school would be dropping Lashan off at the motel. Petitioner promised to take care of her until Sally and Darrell returned. The school employee dropped off Lashan at 4 p.m. At 5:30 p.m., Sally called to let petitioner know that she and Darrell would not be home for a while.

At 7:30 p.m., two rental store employees arrived to repossess the television set. One of the employees witnessed Lashan lying on the bed, watching television. He took the set. At trial, he stated that both petitioner and Lashan were acting "normal."

Between 7:30 and 8:30 p.m., a motel resident saw petitioner pace back and forth between unit ten and the phone booth near the motel's office. Petitioner was not seen again until 9:50 p.m., when he arrived at the South San Francisco home of his girlfriend, Ruthie. At 10:30 p.m., he called the motel and asked to speak to the residents of unit ten. After a few moments, he hung up and told Ruthie that no one was home. Petitioner then called Lashan's parents at their relative's house. He told Darrell that he left the motel at 7:30 and needed a key to the unit. Darrell told him that Lashan could open the door.

Darrell and Sally were disturbed by petitioner's phone call and immediately drove home. In the meantime, petitioner told Ruthie that he was going to the Tenderloin and left her house.

At 10:50, a restaurant employee saw flames shoot out of unit ten's bedroom window. The

United States District Court
For the Northern District of California

fire was soon extinguished. Lashan's naked body was found on the bathroom floor. Her back had been stabbed several times. A motel butcher knife was found on the counter near the kitchen sink. The front room, hallway, bathroom and kitchen had been damaged by soot, smoke and heat.

Petitioner returned to Ruthie's house at 2 a.m. and spent the night. At 7 a.m., Ruthie saw a television report which identified petitioner as a suspect in the motel crimes. She told him to leave. He left and she called the police.

Petitioner called the police an hour later and said he had heard about the fire on television and wanted to discuss it. Soon thereafter, he was taken into custody.

At trial, a fire inspector testified that the fire at the motel had been intentionally set. Two beds were its points of origin and paper was used as an accelerant. The large amount of soot was indicative of a slow-burning fire.

Furthermore, an autopsy revealed that Lashan had died of four deep stab wounds. Other injuries suggested that she had been immobilized before the stabbing. She survived approximately 30 minutes after the stabbing. A vaginal swab revealed the presence of semen in her vagina. No signs of recent trauma to the genital area were found. The absence of trauma was inconclusive as to whether intercourse had occurred shortly before death. Dr. Lack, the pathologist who performed the autopsy, placed the time of death at approximately 9 p.m.

**PROCEDURAL HISTORY**

Trial proceedings took place in San Mateo Superior Court between 1983 and 1986. In August 1990, while his direct appeal was pending, petitioner filed his first state habeas petition. The California Supreme Court denied it in June 1991. The California Supreme Court affirmed petitioner’s conviction and sentence in August 1991. *See Mickle*, 54 Cal. 3d at 156. He filed a second state habeas petition in March 1992. It was denied in July 1992.

In April 1997, petitioner filed a federal habeas petition containing exhausted and unexhausted claims. This court stayed petitioner's federal proceedings pending completion of exhaustion proceedings in state court. Petitioner filed his third state habeas petition to exhaust unexhausted claims in December 1997. The California Supreme Court denied this petition on the merits and on procedural grounds in February 2003.

United States District Court
For the Northern District of California

In February 2003, petitioner noticed the filing in this court of his amended petition. Respondent filed an answer in May 2003. Following a case management conference held on June 9, 2003, the parties litigated issues of procedural default. In August 2004, the court issued an order finding several claims procedurally defaulted. Respondent subsequently filed the instant motion for summary judgment.

**LEGAL STANDARD**

If the moving party demonstrates "that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law" summary judgment is appropriate. Fed. R. Civ. P.56(c); *see Anderson Liberty v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The motion should not be granted, however, if a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could resolve a material issue in the nonmoving party's favor. *See id.* at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d) have separate and distinct meanings. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000). A state court's decision is "contrary to" clearly established federal law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. *Id.* at 413-414. A decision is an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 414.

"[A] federal habeas court may not issue the writ simply because the court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a great[] degree of deference to the state courts . . . ." *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *See Williams*, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Clark*, 331 F.3d at 1070.

The Supreme Court has made clear that as long as the reasoning of the state court does not contradict Supreme Court precedent, the AEDPA's deferential standard applies. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (qualification for AEDPA deference requires neither citation to United States Supreme Court cases nor awareness of them, as long as neither the reasoning nor the result of the state court decision contradicts them).

When a federal court is presented with a state court decision that is unaccompanied by a rationale for its conclusions, the court has no basis other than the record "for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such situations, federal courts must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *Id.* While federal courts "'are not required to defer to a state court's decision when that court gives [them] nothing to defer to, [they] must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.'" *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002) (quoting *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001)). Furthermore, independent review of the record is not de novo review of the constitutional issue, but rather, the only way a federal court can determine whether a silent state court decision is objectively

unreasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, if the state court did not reach the merits of a claim, federal review of the claim is de novo. *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003).

Even if a petitioner meets the requirements of § 2254(d), habeas relief is warranted only if the constitutional error at issue had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Under this standard, petitioners "may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637, *citing United States v. Lane*, 474 U.S. 438, 439 (1986).

**ANALYSIS**

**1) Claim E**

In claim E, petitioner alleges that misleading guilt phase jury instructions permitted the jury to find a lewd and lascivious act on a child without the necessary concurrence of act and intent as required by Cal. Penal Code § 288. Respondent seeks summary judgment on this claim on the grounds that the California Supreme Court reasonably considered and rejected it on direct appeal, thus foreclosing relief under 28 U.S.C. § 2254 (d) and the teachings of *Brecht*. Petitioner counters that the faulty instructions violated his right to due process under *Estelle v. McGuire*, 502 U.S. 62 (1991), and had a substantial and injurious effect in determining the jury's verdict.

The contested jury instructions defined a violation of Cal. Penal Code § 288(a), in relevant part, as follows:

> Where a person compels a child under the age of 14 to remove the child's own clothing, and that person has the specific intent to arouse, appeal to, or gratify the lust, passion or sexual desire of himself or of the child, such person may be guilty of a lewd or lascivious act in violation of the section. No touching of the child by the person is required.

RT 2156.

On direct appeal, the California Supreme Court found:

> At the prosecutor's request, the jury also learned that it could find commission of an unlawful lewd act if defendant "compel[led] [the child] to remove [his or her] own clothing, *and* [defendant had the requisite specific intent]. No touching of the child by [defendant] is required." (Italics added.) This instruction was based on *Austin*, *supra*. Defendant objected to it on undisclosed grounds below . . .
> Defendant's main complaint is that, by using "and" rather than "with" to define the

> necessary relation between act and intent, the *Austin* instruction, as given, might have misled jurors to believe that the sexual intent could have been focused solely on "some future unrealized act." However, no reasonable jury would adopt this construction. It was manifest from the special instruction itself that the constructive disrobing and sexual intent must coincide in order for a crime to occur. The instructions also indicated in at least three other places that a physical touching accomplished "with" such intent violates section 288(a). Contrary to what defendant argues, this language fully informed the jury that defendant could not be convicted on a "disrobing" theory unless he intended to give or receive immediate sexual gratification from that activity. No error occurred.

*Mickle*, 54 Cal. 3d at 176 (internal citations omitted).

Petitioner argues that under the standard articulated in *Estelle*, there is a reasonable likelihood that the jury applied the challenged jury instructions in an unconstitutional manner because the provision that "no touching of the child by the person is required" undercut the required concurrence of act and intent. Petitioner's argument is unpersuasive.

Under *Estelle*, 502 U.S. at 72, in order to challenge a jury instruction on habeas, a petitioner must prove that the ailing instruction so infected the entire trial that the resulting conviction violates due process. The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole. *Id*. The relevant inquiry is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *Id*.

Here, petitioner has failed to demonstrate a reasonable likelihood that the jury applied the challenged instructions in an unconstitutional manner. As the California Supreme Court pointed out, it was clear from the instructions that the constructive disrobing and sexual intent must coincide for a violation of Cal. Penal Code § 288(a) to occur. The state court further pointed out that the instructions indicated in three other places that a touching accomplished "with" sexual intent violates section § 288(a). The court concludes that the state court decision was correct, and was not contrary to, and did not involve an unreasonable application of clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on claim E is granted.

**2) Claim F**

In claim F, petitioner alleges three errors relating to the jury's special circumstance finding that the murder occurred while petitioner was engaged in the commission of a lewd and lascivious act upon a minor. The alleged errors stem from the following events: the jury was instructed that it

must unanimously agree on the particular lewd act or acts found to support the special circumstance charge, and that it must set forth such act or acts on the verdict form. During deliberations, the jury sent the court the note asking whether it must comment on and explain the specific lewd or lascivious act. The judge, without notifying counsel, wrote "yes" on the note and returned it to the jury. The verdict form contained a blank space calling for a description of the lewd or lascivious act or acts committed. In the blank space, the jury wrote "witnessed by the victim[']s nudity and obvious use of force."

The court shall address each alleged error in turn.

**a) Subclaim 1**

Petitioner alleges that he was denied the effective assistance of counsel when the trial judge answered the jury's question without consulting his counsel. Respondent contends that the California Supreme Court reasonably found error but no prejudice resulting from the judge's actions. Petitioner counters that the state court's decision was based on an unreasonable determination of the facts.

On direct appeal, the state court found:

> [Defendant] first argues that the court erred in answering the jury's inquiry about the special circumstance verdict without prior notice to counsel. While the court technically erred, no prejudice occurred under any applicable standard. The court's one-word answer simply directed the jury to follow defense instruction previously given, requiring unanimous overt agreement on any lewd act found to support the special circumstance charge.

*Mickle*, 54 Cal. 3d at 177-78 (internal citations omitted).

Petitioner argues that the state court's decision was unreasonable in that the judge's response did not, in fact, direct the jury to follow the instruction previously given. Instead, it directed the jury to comment and explain, rather than "set forth" the specific acts committed on the victim as required by the instruction. Such an interpretation of the facts is strained. Petitioner has not rebutted the presumption of correctness that attaches to a state court's factual findings. 28 U.S.C. § 2254(e)(1). Accordingly, summary judgment on this subclaim is granted.

**b) Subclaim 2**

Petitioner argues that the verdict was defective because the jury's special circumstance finding did not describe a lewd act within the meaning of Cal. Penal Code § 288. The jury returned

its verdict finding the special circumstance true using a form in which they described the lewd or lascivious acts committed upon the victim to be "witnessed by the victim[']s nudity and obvious use of force." Respondent argues that the state court reasonably considered and rejected this claim on direct appeal. Petitioner counters that the state court's decision constituted an unreasonable determination of the facts.

On direct appeal, the state court found:

> Defendant next argues that the special circumstance must be set aside because the jury ambiguously described the lewd act attributed to defendant. He suggests that unanimous agreement on the nature of the act was never reached.
>
> However, the jury obviously agreed that a lewd and lascivious act had occurred under one of two viable, closely connected theories, i.e, that defendant either forcibly undressed Lashan or forcibly compelled her to undress herself. Any asserted failure to identify or unanimously select one of these factual scenarios is immaterial. As we have recently observed, the requirement of jury unanimity in criminal cases is of constitutional origin. It is primarily intended to ensure that jurors agree upon a particular act where evidence of more than one possible act constituting a charged criminal offense is introduced. Contrary to defendant's suggestion here, the unanimity rule does not extend to the minute details of how a single, agreed-upon act was committed.

*Mickle*, 54 Cal. 3d 178 (internal citations omitted).

Petitioner argues that the state court's decision was unreasonable in that its interpretation of the jury's response goes well beyond the confines of its message. He states that although the jury wrote that two elements, nudity and the obvious use of force, met the special circumstance finding, neither one of those elements describes a lewd act within the meaning of Cal. Penal Code § 288.

Petitioner's argument is unpersuasive. The jury's finding was that the victim was nude and that petitioner used force. The state court's conclusion that the jury had found a lewd act either on the theory that petitioner had forcibly undressed Lashan, or forcibly compelled her to undress, is a reasonable interpretation of the jury's response. Petitioner has not rebutted the presumption of correctness that attaches to a state court's factual findings. 28 U.S.C. § 2254(e)(1). Accordingly, summary judgment on this subclaim is granted.

**c) Subclaim 3**

Petitioner alleges that if in its special circumstance finding, the jury intended to set forth not a specific lewd act but the evidence from which it concluded that a lewd act had been committed, then the evidence set forth in the finding is insufficient to establish a lewd act in violation of Cal.

Penal Code § 288. He claims that neither the victim's nudity nor the obvious use of force is sufficient to establish the commission of a lewd act. Respondent contends that the California Supreme Court reasonably considered and rejected this claim on direct appeal. Petitioner asserts, without explanation, that the state court's decision constituted an unreasonable determination of the facts.

On direct appeal, the state court found:

> Defendant also claims there was insufficient evidence to support the special circumstance finding on a "disrobing" theory. We disagree. The evidence established that 12-year-old Lashan was extremely modest, that she never relaxed in the nude at home, and that she undressed at night only under parental compulsion. Nothing unusual was noticed about her appearance when she was last seen alive watching television at 7:30 p.m. Thus, the jury could reasonably infer that Lashan was clothed an hour later, when the stabbing most likely occurred. However, her body was found in the nude and bore signs of a violent struggle or assault. A rational trier of fact could conclude that, at a minimum, the murder occurred during a sexually motivated, compulsory act of disrobing.

*Mickle*, 54 Cal. 3d at 178 (internal citations omitted).

Petitioner does not explain how or why the state court's decision constituted an unreasonable determination of the facts. Petitioner thus fails to rebut the presumption of correctness that attaches to a state court's factual findings. 28 U.S.C. § 2254(e)(1). Accordingly, summary judgment on this subclaim is granted.

**3) Claim G**

Petitioner alleges that his constitutional rights were violated when the jury was erroneously instructed that independent proof of the corpus delicti is not an element of the felony-murder special circumstance. California law at the time of the charged offense required that the corpus delicti of a felony-murder special circumstance be proven independently of the defendant's extrajudicial statements. *See People v. Mattson*, 32 Cal. 3d 85, 93-94 (1984). Respondent contends that the California Supreme Court reasonably considered and rejected this claim on direct appeal, thus foreclosing relief under 28 U.S.C. § 2254(d). Petitioner counters that the state court's decision misconstrues the record.

On direct appeal, the California Supreme Court found:

> In *People v. Mattson* (1984) 37 Cal.3d 85, 93-94, we held that the corpus delicti rule - requiring the prosecution to establish that a crime occurred independent of the accused's extra-judicial statements - applies to felony-murder special

> circumstance allegations. *Mattson I* relied upon statutory languages stating that such felonies must be proved "pursuant to the general law applying to the trial and conviction of the crime." . . .
>
> The day after *Mattson I* was decided, the jury in this case was instructed that defendant could not be convicted of "a criminal offense" unless there was "some proof of each element of the crime independent of any confession or admission made by him outside of this trial. *This rule does not apply to proof of the special circumstance* . . ." (Italics added.) The italicized language was given at the prosecutor's request, and was based on dictum in *People v. Sanders*, (1983) 145 Cal.App.3d 218, 223. Defendant objected to its use, but did not state his reasons. Apparently, neither the court nor counsel were aware that *Mattson I* had expressly disapproved *Sanders* on this point. . . .
>
> Defendant now argues that , by denying him a state-created entitlement to a jury trial on the corpus delicti of the special circumstance, the "anti-*Mattson*" instruction violated his due process rights under the Fifth Amendment. He insists the error cannot be held harmless beyond a reasonable doubt because the corpus delicti of a lewd act was not established independent of his extrajudicial statements. Defendant does not dispute that under *Mattson I* and its progeny, only a prima facie showing permitting a reasonable inference that a crime occurred is sufficient. Such evidence need not connect the defendant to the crime.
>
> Even under the standard of prejudice urged by defendant, no reasonable jury properly instructed under *Mattson I*, would have reached a different result on the felony-murder special-circumstance allegation. Here, the naked body of a girl under age 14 was found with semen in her vagina and with other injuries indicative of a violent assault. These facts give rise to a strong inference that an unlawful sexual touching occurred. This inference satisfies the corpus delicti rule. *People v. Mattson* (1990) 50 Cal.3d 826, 874-875 [nine-year-old murder victim found naked from the waist down with lacerated hymen and other injuries.])
>
> In any event, the record discloses that the jury did not rely on defendant's extrajudicial statements in finding the special circumstance to be true. In statements to police and informant Steele, defendant claimed to have engaged in a "sex" act with Lashan, i.e., "rape." He also told police that she was clothed - "had a dress on" - at the time of the stabbing and presumably the sexual assault. However, the jury identified the lewd act underlying the special circumstance as a compulsory act of disrobing. This special finding forecloses any possibility that the jury relied upon defendant's extrajudicial admissions.

*Mickle*, 54 Cal. 3d 179-80.

Petitioner argues that the state court unreasonably concluded that since the jury's special circumstance finding of a lewd act was comprised of compulsory disrobing, an act which was not referenced in his confession or admission, then the jury necessarily must have found proof of the special circumstance independently of any confession or admission. As in claim F, *supra*, he argues that neither nudity nor the use of force as cited by the jury constitutes a lewd act. This argument however, merely reiterates petitioner's challenge to the special circumstance finding. It does not establish that the state court unreasonably concluded that the jury's special circumstance finding was independent of petitioner's confession or admission. Moreover, an instruction that petitioner's confession or admission may not support the jury's special circumstance finding would not have

**United States District Court**
For the Northern District of California

changed the result.

The court concludes that the state court decision was correct, and was not contrary to, and did not involve an unreasonable application of clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on claim G is granted.

**4) Claim I**

Petitioner alleges that the Daly City Police Department's failure to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) prior to his interrogation at Chope Hospital on February 27, 1983, violated his constitutional rights and requires suppression of his statements. Respondent argues that the California Supreme Court reasonably considered and rejected this claim on direct appeal. Petitioner counters that the state court's conclusion that he was adequately advised of his *Miranda* rights was unreasonable in light of an extensive record evidencing his mental impairment at the time that he was questioned.

On direct appeal, the California Supreme Court found:

> As noted, defendant turned himself in for questioning late February 25, the day after the crimes. Beginning at 10 p.m., he had three consecutive interviews over a four-hour period at the police station. The first and third sessions were with Detectives Reese and McCarthy, and the second one was with Parole Officer Bandettini. Defendant does not dispute that he knowingly and voluntarily waived his *Miranda* rights before speaking with both sets of officials; that all stationhouse statements were properly admitted at trial; and that he never invoked his right to counsel or silence. In the third session, defendant made incriminating statements on the murder, lewd conduct, and arson charges.
>
> Defendant claims the trial court erred in denying his pretrial motion to suppress statements subsequently made in a fourth interview with the same detectives at Chope hospital. He insists he should have been readvised of his *Miranda* rights at the hospital to ensure that he was capable of remembering the prior warning and deciding to answer more questions. In our view, the court did not err in concluding that the original *Miranda* warnings were "adequate" and that defendant's hospital statements were admissible at trial.
>
> The pertinent facts are as follows: For reasons not clear from the record, defendant was determined to be a suicide risk and hospitalized after his arrest. Detectives Reese and McCarthy arrived at the hospital about 10 a.m. on February 27. A nurse said defendant had a "bad night," but she did not elaborate. The officers entered defendant's room which was locked from the outside, and saw him sitting on the bed. He looked calm and normal. Reese asked defendant whether he "remembered" them and their "conversation" from the "other night." Defendant said he did. McCarthy asked defendant how he was doing, and defendant replied, "All right." As noted earlier, the officers asked defendant questions for about 10 minutes and elicited a few new details about the fire and stabbing. They ended questioning when a nurse entered to administer medication. . . .
>
> As conceded by defendant, readvisement is unnecessary where the subsequent

> interrogation is "reasonably contemporaneous" with the prior knowing and intelligent waiver. (*People v. Braeseke* (1979) 25 Cal.3d 691, 701-702) . . . The courts examine the totality of the circumstances, including the amount of time that has passed since the waiver, any change in the identity of the interrogator or the location of the interview, any official reminder of the prior advisement, the suspect's sophistication or past experience with law enforcement, and any indicia that he subjectively understands and waives his rights. (See *Martin v. Wainwright* (11th Cir. 1985) 770 F.2d 918, 930-31 . . .)
>
> Here, the hospital interview occurred only 36 hours after defendant had twice received and twice waived his *Miranda* rights. (See *Martin v. Wainwright*, *supra*, 770 F.2d at pp.930-931 [readvisement unnecessary one week later].) It was clear from the circumstances that defendant was still in official custody. He was familiar with the criminal justice system and could reasonably be expected to know that any statements made at this time might be used against him in the investigation and any subsequent trial. Indeed, the hospital interview was conducted by the same two officers who had interrogated defendant and placed him under arrest at the police station. By asking whether he "remembered" them and the prior "conversation," the officers implied that they were simply tying up loose ends from the earlier "Mirandized" session. Nothing in the record indicates that defendant was mentally impaired or otherwise incapable of remembering the prior advisement and deciding to answer a few more questions. Under these facts, no *Miranda* violation occurred.

*Mickle*, 54 Cal. 3d at 169-71.

Contrary to petitioner's assertion, the state court's conclusion that he was adequately advised of his *Miranda* rights did not constitute an unreasonable factual determination. Petitioner argues that the record evidences numerous facts demonstrating his mental impairment: his initial jail interview was terminated because he was getting sick, he became incoherent during a subsequent interview at the jail, he was transported to Chope Hospital because he was potentially suicidal, the nurse at Chope reported that petitioner had a "bad night" and gave him medication once his interview there ended. These assertions however, do not undercut the state court's findings on direct appeal. The California Supreme Court took note of the same facts cited by petitioner. It stated that petitioner was determined to be at risk for suicide, that the nurse stated the he had a "bad night" and administered medication. The state court did not misconstrue these facts. Furthermore, the record does not support petitioner's assertions that in the course of one of the jail interviews, he became increasingly incoherent. It primarily demonstrates that petitioner rambled at times during the interview, CTP 9/8 104-05, and made incriminating statements. CTP 8/30 62-71.[1] Finally, although one of petitioner's jail interviews was terminated because he was getting sick, the record shows that his illness appeared to stem from an upset stomach. CTP 9/8 11, 43. These facts do not suggest that

---

[1]"CTP" refers to the clerk's transcript of the preliminary hearing.

petitioner was mentally impaired and did not subjectively understand and waive his rights.

The court concludes that the state court decision was correct, and was not contrary to, and did not involve an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on claim I is granted.

**5) Claim K**

Petitioner alleges that the trial court violated his constitutional rights when it ruled that his prior felony convictions would be admissible for impeachment purposes if petitioner were to testify at the guilt phase. He asserts that the prior convictions' potential for undue prejudice far outweighed their probative value. Respondent alleges that the California Supreme Court reasonably considered and rejected this claim on direct appeal. He further asserts that petitioner waived his claim under *Luce v. United States*, 469 U.S. 38, 43 (1984), which holds that a defendant must testify in order to preserve for review a claim of improper impeachment with a prior conviction.

Petitioner counters that the California Supreme Court rejected respondent's waiver argument on the grounds that the requirement that a defendant testify in order to preserve his claim on appeal was established by *People v. Collins*, 42 Cal. 3d 378, 383-88 (1986), after petitioner was tried, and therefore does not apply to his case. Petitioner further argues that *Luce* does not foreclose relief on his claim because he did in fact testify in the penalty phase of trial, and asserts that his guilt phase testimony would have conformed to his penalty phase testimony. Finally, he contends that the state court's conclusion that petitioner was not prejudiced by his failure to testify at the guilt phase constitutes an unreasonable determination of the facts.

On direct appeal, the California Supreme Court found:

> Defendant claims the trial court erred in finding his prior felony convictions admissible for impeachment. We disagree.
>
> Before the October 1984 guilt trial, defendant moved to preclude impeachment with his 1975 lewd conduct conviction and 1980 child cruelty conviction. He argued that the prior convictions were "too similar" to the sole special-circumstance allegation of murder in the commission of a lewd and lascivious act upon a minor. The prosecutor replied that addition of article I, section 28, subdivision (f) to the California Constitution by Proposition 8 eliminated all restrictions on the admissibility of prior convictions for impeachment, including the court's traditional power to exclude prejudicial evidence. . . . Without comment, the court denied defendant's motion.
>
> Defendant did not testify at the guilt phase. The first degree murder charge

was submitted to the jury on theories of premeditated murder and murder in the commission or attempted commission of a lewd act. Defendant was convicted, as charged, of first degree murder and arson, and the special circumstance was found true.

In October 1985, before the start of the penalty phase, defendant moved for a new trial under *People v. Castro*, *supra*, 38 Cal.3d 301 (*Castro*), which was decided after the guilt verdict was rendered. Defendant conceded in the motion - as he does on appeal - that his prior convictions involve moral turpitude and are "prima facie admissible" under *Castro*. He argued, however, that the court erred in failing to exercise its discretion to exclude the priors as substantially more prejudicial that probative, and that he had been kept off the stand as a result.

At the hearing on the new trial motion, the court announced that it had exercised its *Castro* discretion and determined that its pretrial decision to admit the prior convictions was correct. The court then denied the motion.

We first reject the Attorney General's suggestion that defendant has waived the right to challenge this ruling. Although *People v. Collins* (1986) 42 Cal.3d 378, 383-388 [228 Cal.Rptr. 899, 722 P.2d 173] (*Collins*), requires a defendant to testify in order to raise a *Castro* claim of improper impeachment on appeal, this rule applies to trials beginning after *Collins* became final. Where, as here, the case was tried before *Collins*, it is governed by prior law enabling a defendant to raise such a claim even though he did not testify or make an offer of proof.

Nevertheless, we reject defendant's claim that the guilt judgment should be reversed on abuse-of-discretion grounds. At the hearing on the new trial motion, the prosecution indicated that it never intended to introduce the facts underlying the 1980 child cruelty conviction - forcible rape - if it were admitted for impeachment. The court could reasonably conclude that the sanitized version would not have tainted the instant verdict. While defendant's 1975 lewd conduct conviction is similar to certain elements of the charged crimes, it was almost 10 years old at the time of the guilt trial. The court could reasonably conclude that it was neither so recent as to prejudice defendant, nor so remote as to have no bearing on his credibility. . . .

Defendant insists that the case should at least be remanded so that the trial court - which had heard the prosecution's evidence when making its belated *Castro* ruling - can reassess the issue after hearing what his own testimony would have been. However, no "Collins remand" is necessary. We can determine from the existing record that defendant was not prejudiced by the court's failure to consider his probable testimony, or by his failure to testify at the guilt phase.

Defendant argues that, had he testified on the issue of guilt, he could have rebutted the prosecution's claims of premeditated murder and special circumstance charges. However, defendant concedes his guilt phase testimony would have conformed to testimony actually given under oath at the penalty trial. There, he denied committing the crimes or being present at the motel when they occurred. This alibi defense has no bearing on whether defendant was properly found guilty of first degree murder with a special circumstance, as opposed to other possible offenses arising out of the motel incident. [FN 16]

FN16 Defendant erroneously claims he testified at the penalty phase that he killed Lashan as the result of an "uncontrollable impulse" and that no sexual misconduct occurred. Although he told *police* he had "sex" with Lashan and "unintentionally" stabbed her, he denied any involvement in the motel crimes at *trial*.

Moreover, this alibi defense is inherently implausible. Defendant admitted at the penalty trial, and an eyewitness confirmed, that defendant was present at the motel throughout the day on February 24 and until 8:30 p.m. Medical evidence established that the stabbing most likely occurred at that time. There was no evidence suggesting that a third person had gained entry to the motel and stabbed Lashan. No witness other than defendant could account for his whereabouts between 8:30 and 9:50 p.m., giving him ample time to commit the crimes and walk to Ruthie's

United States District Court
For the Northern District of California

> house. In addition, defendant's version of events at trial was implicitly undermined by four witnesses who said he had admitted involvement in the motel crimes (i.e., two police officers, a nurse, and an informant).
>
> Under the circumstances, it is not reasonably probable that the outcome of the guilt trial would have been different if defendant had testified absent fear of impeachment with his prior convictions. The court's decision to admit them for that purpose was harmless.

*Mickle*, 54 Cal. 3d 171-73.

As respondent points out, petitioner has failed to demonstrate that the state court decision was contrary to, or constituted an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Nor is his argument that the state court's harmless error finding constituted an unreasonable factual determination persuasive. As noted above, the California Supreme Court found that had petitioner offered his penalty phase testimony at the guilt phase, his testimony - which denied involvement in the motel crimes - would have had no bearing on whether he was properly found guilty of first degree murder with a special circumstance, as opposed to other possible offenses arising out of the motel incident. Petitioner argues however, that in his penalty phase testimony, he recognized that he might have committed the charged crimes but had no recollection of if because there was something wrong with his mind. He asserts that had this testimony been presented at the guilt phase, the jury might have concluded that he killed Lashan K. under a violent impulse that had nothing to do with specific sexual activity. He asserts that such a view of the evidence would have precluded a conviction for first degree murder and a special circumstance finding. Not only is petitioner's argument speculative, but it merely argues for a different factual interpretation from the one reached by the state court. Petitioner does not demonstrate that the state court's factual finding was unreasonable.

For the above-mentioned reasons, summary judgment on claim K is granted.

**6) Claim L**

Petitioner argues that his right to be present at all stages of his trial was violated when the trial court received and responded to three inquiries from the jury in his absence. The court shall address each set of allegations in turn.

**a) Subclaim 1**

Petitioner first argues that his constitutional right to be present at all stages of his trial was

**United States District Court**
For the Northern District of California

violated when the following events transpired: after the beginning of deliberations, the jury sent a note to the judge stating that it needed a summarized definition of the charges of first and second degree murder. Without notifying counsel, the judge wrote the following sentence on the note and returned it to the jury: "If you wish to be brought back into court, I will reread the information to you." Petitioner argues that his absence during this exchange constitutes reversible error.

Respondent contends that the California Supreme Court reasonably considered and rejected this claim on direct appeal. Citing *Rushen v. Spain*, 464 U.S. 114, 117 (1983) and *Rogers v. United States*, 422 U.S. 35, 38 (1975), petitioner counters that the state court decision unreasonably failed to extend United States Supreme Court precedent to the context of his case. He further asserts that contrary to the state court's conclusion, the trial judge's response in effect provided the jury with additional instruction -- it led it to believe that he was offering to reread the charging document, which was not relevant to the jury's request. Petitioner claims that had he and his counsel been present, they would have clarified the jury's confusion.

On direct appeal, the state court found:

> The jury received standard instructions defining murder, malice aforethought, first degree premeditated murder, first degree felony murder, second degree murder, and voluntary and involuntary manslaughter. Two hours after it retired to deliberate, the jury sent the court a note asking for a "summarized definition of the charges of murder. First degree. Second Degree." In the presence of the court clerk and reporter, but without notifying counsel, the court wrote the following sentence on the note and returned it to the jury: "*If you wish to be brought back into court, I will reread the information to you*." (Italics added.) The jury never responded to the court's offer.
>
> Defendant claims the court breached section 1138, which states that any "information" requested by the jury during deliberations must be given "in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." For similar reasons, defendant insists the court violated his Sixth Amendment right to counsel.
>
> While the preferable practice is to notify counsel of all mid-deliberation jury inquiries, the trial court did not err here. A statutory or constitutional violation occurs only where the court actually provides the jury with instructions or evidence during deliberations without first consulting counsel. Here, the court simply offered to provide further instruction in open court, presumably after the proper notice to counsel. The offer was not accepted, and no murder instructions were actually given after the jury retired to deliberate.
>
> Defendant makes the alternative claim that his Fifth Amendment right to a fair trial was violated by the lack of further instruction. We disagree. Jurors never responded to the court's offer to "reread the information" they had requested. Defendant's suggestion that this offer confused the jury into remaining silent is speculative and implausible. We can only assume that the jury, upon reflection, was satisfied with the original murder instructions.

*Mickle*, 54 Cal. 3d at 173-74 (internal citations omitted).

Contrary to respondent's assertions, the state court did not unreasonably fail to extend Supreme Court precedent to his case.  Neither *Rushen* nor *Rogers* compel the result he seeks. *Rushen* involved an ex parte communication between a trial judge and a juror.  A juror twice went to the judge's chambers to converse with him.  The judge made no record of the conversations and did not inform the defendants or their counsel about them.  *Rushen*, 164 U.S. at 116.  Noting that "the right to personal presence at all critical stages of the trial  . . . [is a] fundamental right[] of each criminal defendant", the court found that such communication can nonetheless constitute harmless error.  *Id*. at 117-18.  Unlike the situation in *Rushen*, the judge in petitioner's case simply offered to provide further instruction in open court.  *Rushen* does not warrant the extension of precedent sought by petitioner.

*Rogers*, in turn, involved additional instruction from a judge to a jury without notification to defendant or his counsel.  The Supreme Court found such instruction to violate Fed. R. Crim. P. 43. *Rogers*, 422 U.S. at 39.  *Rogers* did not involve a constitutional violation, and also does not warrant the extension of precedent sought by petitioner.

Furthermore, as respondent points out, a defendant's right to be present at trial is protected by due process where the defendant is not actually confronting witnesses or evidence against him. *United States v. Gagnon*, 470 U.S. 522, 526 (1985).  A defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."  *Id*., *citing Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934).  Here, petitioner's absence during the judge's exchange with the jury did not thwart the fairness of the proceedings.

Finally, the court finds that the California Supreme Court's interpretation of the trial judge's response as constituting an offer to reread the instructions rather than the charging document as respondent suggests, was not unreasonable.

For the foregoing reasons, summary judgment on this subclaim is granted.

**b) Subclaim 2**

Petitioner next argues that his constitutional rights were violated when the jury sent a second note asking whether it must "comment and explain the specific lewd and lascivious act", and the judge responded by writing "yes" on the note and returning it to the jury. He contends that the trial court erred by responding to the jury's inquiry without first providing notice to him or his counsel.

In addressing this claim on direct appeal, the California Supreme Court found that:

> [W]hile the court technically erred, no prejudice occurred under any applicable standard. The court's one-word answer simply directed the jury to follow defense instructions previously given, requiring unanimous overt agreement on any lewd act found to support the special circumstance charge.

*Mickle*, 54 Cal. 3d at 177-78.

Petitioner does not advance any arguments different from those discussed in L(1) above in support of this subclaim. He thus fails to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of federal law as determined by the United States Supreme Court. Accordingly, summary judgment on this subclaim is granted.

**c) Subclaim 3**

Finally, petitioner argues that his constitutional right to be present at all stages of his trial was violated when the following events transpired: during the course of deliberations, the penalty phase jury sent the judge a note requesting "a copy of the law" and the chart used by the prosecutor in closing argument. The judge sent back a note asking, "What law?", and the jury responded in a second note: "[L]aw to arrive at sentence." The prosecutor, defense counsel and trial judge discussed the nature of the request before the prosecutor requested that petitioner be brought into the courtroom.

Petitioner does not advance any arguments different from those discussed in L(1) above in support of this subclaim. He fails to demonstrate any constitutional violation from the above sequence of events. Accordingly, summary judgment on this subclaim is granted.

**7) Claim M**

In a reformulation of claim L(1) above, petitioner alleges that the trial judge's handling of the jury's note on murder instructions violated his constitutional rights to the assistance of counsel and due process. As noted above, after the beginning of deliberations, the jury sent a note to the judge stating that it needed a summarized definition of the charges of first and second degree murder.

Without notifying counsel, the judge wrote the following sentence on the note and returned it to the jury: "If you wish to be brought back into court, I will reread the information to you." Petitioner argues that by failing to inform trial counsel of the note, the trial judge deprived petitioner of his right to the assistance of counsel at a critical stage of the trial proceedings, in violation of the Sixth and Fourteenth Amendments.

As noted in the discussion of claim L(1) above, the state court reasonably considered and rejected petitioner's claim on direct appeal, thus foreclosing relief under § 2254(d). Although in this claim petitioner alleges violations of his constitutional rights to the assistance of counsel and due process, he fails to develop any arguments different from those discussed in L(1). Accordingly, summary judgment on claim M is granted.

**8) Claim N**

In claim N, petitioner alleges constitutional error arising from the judge's failure to sua sponte instruct the jury on the definition of "attempt". He argues that the jury may have believed that he murdered Lashan K. before completing a lewd act, and absent instructions on the definition of attempt, it may have based its first degree murder or special circumstance finding on an uncompleted act of lewdness that fell short of an attempt. Respondent contends that the state court reasonably considered and rejected this claim on direct appeal.

On direct appeal, the state court discussed this claim as follows:

> The jury was instructed that defendant could be found guilty of first degree murder if the killing occurred during the "*commission of or attempt* to commit" a lewd and lascivious act upon a child under the age of 14. (Italics added). However, the information, instructions, and written verdict form stated that the jury could find the special circumstance to be true if the killing occurred while defendant was "engaged in the *commission of*" a lewd act. (Italics added.) The jury received an instruction defining lewd and lascivious conduct under section 288, subdivision (a) (section 288(a)). No instruction defining attempt was given. As mentioned earlier, defendant was convicted of first degree murder and arson, and the special circumstance was found true.
>
> Defendant insists the trial court erred prejudicially by failing to instruct sua sponte on the elements of attempt. He argues that absent such an instruction, the jury was left to speculate that some act other than an attempt was sufficient to satisfy the first degree felony-murder charge. Defendant also claims the omission might have misled jurors to believe that they could apply the same erroneous "attempt" theory to the special circumstance allegation.
>
> Even if the attempt instructions were incomplete, no prejudice occurred. The prosecutor argued at the end of the guilt phase that defendant unlawfully committed two acts upon Lashan shortly before the murder, namely, compulsory disrobing and forcible rape. No attempt theory was urged. Similarly, the information, instructions,

> and verdict form spoke only in terms of a completed lewd act at the special circumstance phase. Because jurors found the special circumstance to be true, they necessarily found such a completed act, and thereby foreclosed any speculation that they based either the first degree murder verdict or the special circumstance finding on some unknown, incorrect theory of attempt.
>
> Defendant suggests that the special circumstance finding does not conclusively resolve the attempt question. He argues that because jurors were instructed to reach a verdict on the murder charge before turning to the special circumstance allegation, they might have been "thinking in terms of an attempt" for each offense. We are not persuaded. The instructions on all charges were read at the same time. We assume the jury followed the special circumstance instruction and found actual commission of a lewd and lascivious act.

*Mickle*, 54 Cal. 3d at 174-75.

Petitioner argues the state court decision constituted unreasonable determination of the facts in light of the evidence presented. He contends that because the jury did not adequately identify a completed lewd and lascivious act on the verdict form, there is a reasonable likelihood that it found that Lashan K. was killed in the course of conduct less than a completed lewd act, and that it is likewise reasonably likely that the jury found that an attempted offense was sufficient for a finding that the special circumstance was true. Petitioner's argument is speculative and fails to rebut the presumption of correctness that attaches to a state court's factual findings. 28 U.S.C. § 2254(e)(1). As noted in the discussion of claim F(2) above, this court finds that the state court's determination that the jury's special circumstance finding adequately described a lewd and lascivious act was reasonable. Accordingly, summary judgment on claim N is granted.

**9) Claim O**

Petitioner argues that assuming that there was insufficient evidence of attempt, reference to it in the first degree felony murder instructions violated his constitutional rights. As noted above, the jury was instructed that petitioner could be found guilty of first degree murder if the killing occurred during the "*commission of or attempt* to commit" a lewd and lascivious act upon a child under the age of 14. *Mickle*, 54 Cal. 3d at 174. The jury was not instructed on the definition of attempt. Petitioner asserts that the incomplete instruction on a legal theory unsupported by the evidence likely mislead the jury and violated his right to due process. Respondent argues that the state court reasonably found no error resulting from the inclusion of the word "attempt" in the jury instructions.

Respondent is correct. As noted in the discussion of claim N above, the state court reasonably concluded that "because the jurors found the special circumstance to be true, they

United States District Court
For the Northern District of California

necessarily found [a completed lewd act], and thereby foreclosed any speculation that they based either the first degree murder verdict or the special circumstance finding on some unknown, incorrect theory of attempt." *Id*. at 175. This finding makes the reference to attempt irrelevant and forecloses relief on this claim. Accordingly, summary judgment on this claim is granted.

**10) Claim P**

Petitioner argues that the cumulative effect of the errors which allegedly occurred at the guilt phase of trial combined to create prejudice and compel the reversal of his conviction. Petitioner submits however, that this claim of cumulative error may only be adjudicated once all guilt claim errors have been addressed. The court agrees and defers ruling on this claim until all guilt phase claims have been addressed. Summary judgment on this claim is denied without prejudice.

**11) Claim X**

Respondent does not move for summary judgment on claim X at this time. This court previously found this claim to be procedurally defaulted, but deferred ruling on whether petitioner has shown cause and prejudice to overcome the default. Both respondent and petitioner agree that this claim should be addressed in subsequent briefing. The court therefore defers ruling on claim X until cause and prejudice are addressed.

**12) Claim Y**

For the same reasons as those discussed in claim X above, the parties agree that claim Y should not be adjudicated at this time. The court therefore defers ruling on claim Y until cause and prejudice are addressed.

**13) Claim Z**

Petitioner alleges that the trial court's exclusion of rebuttal testimony regarding the level of competence necessary for petitioner to assist counsel in the penalty phase of trial violated his constitutional rights. At a competency hearing, two court-appointed psychiatrists, Dr. Bryan and Dr. Small, testified that they had examined petitioner and found him competent. In rebuttal, the defense called an attorney, John Balliet, to the stand. Outside the presence of the jury, Mr. Balliet stated that he would testify about the kind of cooperation needed between a capital defendant and counsel, and the varieties of evidence admissible at the penalty phase. The trial court excluded his testimony

United States District Court
For the Northern District of California

under Cal. Evid. Code § 352. Petitioner argues that this ruling violated his constitutional rights.

Respondent argues that petitioner's claim lacks merit because a defendant's mental competence to stand trial does not depend on a comprehension of legal and tactical issues peculiar to the proceedings in question. Respondent further contends that the trial court reasonably rejected this claim on direct appeal, thus foreclosing relief under 28 U.S.C. § 2254(d).

On direct appeal, the California Supreme Court discussed this claim as follows:

> On cross-examination by defendant, [Dr. Bryan and Dr. Small] testified that they had never appeared as witnesses in the penalty phase of a capital trial and knew little about the evidence typically admitted therein. (See § 190.3). Over the prosecutor's relevance objection, the witnesses were asked whether they had considered the seriousness of defendant's crimes, the possibility that a wide range of evidence might be introduced, and the possibility that a death sentence might be imposed before declaring defendant competent. Dr. Small explained that such considerations did not affect his determination that defendant was able to understand the proceedings and communicate rationally with counsel. Dr. Bryan said that, while the severity of possible sentences might increase defendant's mental strain during trial, he (Bryan) had taken this fact into account before finding defendant competent.
>
> After the People rested, defendant called an attorney, John Balliet, to the stand. Outside of the jury's presence, defendant argued that Balliet was an expert in California death penalty law and would testify about the "kind of cooperation" needed between a capital defendant and counsel, and the "varieties of evidence" admissible at the penalty phase. The prosecutor argued that Balliet's testimony was irrelevant because section 1367 does not differentiate among types of crimes or trials in defining competence. The court excluded the evidence under Evidence Code section 352.
>
> Defendant now argues that the court abused its discretion and violated his federal constitutional right to a fair trial. In defendant's view, Balliet's testimony should have been admitted because it deeply undermined the prosecution's mental evidence.
>
> We disagree. Both psychiatrists made it clear that the concerns Balliet might discuss did not affect their assessment of defendant's mental capacity to stand trial. And, nothing in the offer of proof indicated that Balliet would describe the particular facts or complexities of this case. The court could reasonably conclude that the probative value of Balliet's testimony was low, while the risk of undue delay and jury confusion was high. No error occurred.

*Mickle*, 54 Cal. 3d at 185.

Petitioner's arguments are not persuasive. "[I]t is not the province of a federal court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. In a challenge to an evidentiary ruling, relief may be warranted if the state court decision "so infused the trial with unfairness as to deny due process of law." *Id*. at 75. Here, petitioner contends that the state's exclusion of the rebuttal testimony violated

his rights because it deprived the jury of information regarding the nature of a penalty trial and thus led to a flawed competency determination.  As respondent points out however, competency depends on a determination of whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 175 (1960).  Competence does not depend on the nature of the legal proceedings a defendant is faced with.  The court thus finds that the state court reasonably concluded that the probative value of Balliet's testimony was low, while the risk of undue delay and confusion was high.  The state court's ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).

For the above-mentioned reasons, summary judgment on claim Z is granted.

**14)  Claim BB**

Petitioner asserts that the cumulative effect of the errors that allegedly occurred at the competency hearing impaired the reliability of the competency determination and penalty verdict, and violated his constitutional rights.  Petitioner contends however, that claim BB may be adjudicated only after all relevant claims of error have been addressed.  The court agrees and defers ruling on claim BB until other relevant claims are addressed.  Summary judgment on this claim is denied without prejudice.

**15)  Claim CC**

Petitioner alleges that the Daly City Police Department's failure to give petitioner *Miranda* warnings at Chope Hospital on February 27, 1983, violated his privilege against self-incrimination and requires suppression of his statements, which were admitted in the penalty phase of trial.  This claim mirrors allegations contained in claim I above, which relate to the guilt phase of trial.  The statements challenged in claim I were also admitted in the penalty phase.

Respondent argues that the state court reasonably rejected this claim on direct appeal, and that the admission of petitioner's statements was as proper at the penalty phase as it was at the guilt phase.  Petitioner counters that for the same reasons as those advanced in relation to claim I, the admission of petitioner's statements resulted in prejudicial error in the penalty phase as well as the

guilt phase of trial.

As stated in the discussion of claim I, the court finds that the state court reasonably concluded that petitioner was adequately advised of his *Miranda* rights. Accordingly, the admission of petitioner's statements was as proper at the penalty phase as it was at the guilt phase.

For the above-mentioned reasons, summary judgment on this claim is granted.

**16) Claim HH**

Petitioner alleges that the trial judge's grant to the prosecution of unlimited access to petitioner's psychiatric records following his testimony on direct examination violated his state-created liberty interest in the psychotherapist-patient privilege. This claim arises from events following petitioner's testimony on his own behalf at the penalty phase. At the conclusion of his direct examination, the judge granted the prosecution's request for access to his psychiatric records from the Napa and Atascadero State Hospitals. Petitioner was cross-examined based on information obtained from these records. He contends that the disclosure of the records and the prosecutor's cross-examination, which allegedly included questioning concerning matters irrelevant to his testimony on direct examination, violated his right to due process under the Fifth and Fourteenth Amendments.

Respondent argues the state court reasonably found no error under state law when it addressed this claim on direct appeal. *See Mickle*, 54 Cal. 3d at 189-90. He further claims that petitioner has failed to establish a due process violation.

Respondent is correct. A state violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). The touchstone of due process is the protection of the individual against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1988). Only the most egregious official conduct can be said to be arbitrary in the constitutional sense. *Id*. at 846. Here, petitioner fails to demonstrate that the state court's application of state law in granting access to petitioner's psychiatric records following his testimony on direct examination constituted arbitrary or conscience-shocking conduct. As the California Supreme Court pointed out, assuming that petitioner's records contained confidential information, the trial court reasonably

United States District Court
For the Northern District of California

could have concluded that petitioner's entire mental condition had been placed in issue on direct examination and that records of past psychotherapy would be relevant on cross-examination. *See Mickle*, 54 Cal. 3d at 190. No due process violation is shown.

For the above-mentioned reasons, summary judgment on claim HH is granted.

**17) Claim JJ**

Respondent does not move for summary judgment on claim JJ at this time. This court previously found this claim to be procedurally defaulted and deferred ruling on whether petitioner has shown cause and prejudice to overcome the default. Both respondent and petitioner agree that this claim should be addressed in subsequent briefing. The court therefore defers ruling on claim JJ until cause and prejudice are addressed.

**18) Claim KK**

Petitioner alleges that the prosecutor improperly argued at the penalty phase of trial that factors enumerated in Cal. Penal Code § 190.3(e), (i) and (k) can be considered either in aggravation or mitigation. Cal. Penal Code § 190.3 (e), (i) and (k) provide, respectively, that in determining the penalty, the trier of fact shall take into account any of the following factors, if relevant: whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act, the age of the defendant at the time of the crime, and any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime. Petitioner contends that the California Supreme Court has held that factors enumerated in Cal. Penal Code § 190.3(d), (e), (f), (g), (h), (j) and (k) may be accorded only mitigating weight, and may not be used in aggravation. He alleges that the prosecutor's argument to the contrary violated his constitutional rights.

Respondent moves for summary judgment on this claim on the grounds that petitioner has failed to show any constitutional violation arising from the alleged misconduct. He asserts that to obtain relief for a claim of prosecutorial misconduct, petitioner must show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). According to respondent, the record here shows that no egregious misconduct occurred.

Respondent is correct. The touchstone of due process in cases of prosecutorial misconduct is

the fairness of the trial, not the culpability of the prosecutor. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Even if a prosecutor's argument is egregiously improper, a federal court cannot issue a writ of habeas corpus to state authorities unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996), *citing Darden*, 477 U.S. 181 (internal citations omitted). As discussed below, the record here does not support petitioner's allegations.

Although the prosecutor stated that factor (e), which directs the trier of fact to take into account whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act, can "either aggravate or mitigate", she further stated that it didn't apply to petitioner's case. RT 7950.[2] With respect to factor (i), which instructs the trier of fact to consider the age of the defendant at the time of the crime, she stated that petitioner's age did not "mitigate[] in any way the gravity of the crime." RT 7952. She did not argue that petitioner's age constituted an aggravating factor. Finally, with respect to factor (k), which instructs the trier of fact to consider any other circumstance which extenuates the gravity of the crime, the prosecutor explained that it includes "any factor or any piece of evidence that is offered by the defense in support of their request for the life imprisonment sentence that related to sympathy or the character or record of the defendant." RT 7953. Although the prosecutor briefly referred to factor (k) as one that may be considered either in mitigation or aggravation, RT 7953, she later focused her argument on the proposition that petitioner warranted little sympathy. RT 7988-7991. The record does not demonstrate that the prosecutor's comments rendered petitioner's trial unfair.

The court has examined all of the instances of alleged misconduct and concludes that petitioner has failed to demonstrate any constitutional violation arising from the prosecutor's comments. Even if the prosecutor's comments did result in a constitutional violation, petitioner has not demonstrated that they had a substantial and injurious effect in determining the jury's verdict. *See Brecht*, 507 U.S. at 638. Accordingly, summary judgment on claim KK is granted.

**19) Claim MM**

Petitioner alleges that the trial judge violated his Eighth and Fourteenth Amendment rights

---

[2] "RT" refers to reporter's transcript.

when he improperly excluded three defense witnesses' answers to certain questions during direct examination at the penalty phase of trial. Respondent contends that the state court reasonably rejected petitioner's claims on direct appeal. The court will address the testimony of each witness in turn.

**a) Dr. Paul A. Walker**

Dr. Walker, a psychologist, testified as an expert witness for the defense regarding petitioner's mental condition. On several occasions, the trial court sustained the prosecutor's objections to petitioner's counsel's questions for Dr. Walker on direct examination. Petitioner contends that as a result, he was precluded from presenting evidence of the inadequacy on the mental health treatment he received while in mental hospitals and in prison, as well as evidence of the type of treatment that would have been effective.

In addressing this claim on direct appeal, the California Supreme Court found no prejudice resulting from the trial court's ruling. The court stated:

> Defendant claims the trial court erroneously prevented three defense witnesses from answering certain questions during direct examination. As we will explain, any error was harmless beyond a reasonable doubt.
>
> Defendant first argues that the court erred in sustaining the prosecutor's relevance objections to the following questions asked of Dr. Walker about psychological care defendant received before the instant crimes: (1) "what should have been done" for defendant during each hospital and prison stay, (2) how has the professional "perception" and "treatment" of pedophilia "change[d]" over the years, and (3) "what should have been done to safeguard the public" each time defendant was released from an institution. Defendant insists here, as in his offer of proof below, that evidence of the state's "improper" diagnosis and treatment should have been allowed in mitigation.
>
> We agree. The proffered evidence was relevant and admissible insofar as it suggested that defendant has sought and/or been denied treatment which might have controlled the same dangerous personality disorder that purportedly contributed to the instant crimes. The jury could reasonably view such fact as bearing on defendant's moral culpability.
>
> Nevertheless, the jury heard a detailed account of the "inappropriate" treatment received by defendant during each institutional confinement. Based upon commitment records and personal interviews, Dr. Walker and Dr. Haney testified that defendant: (1) should not have been placed in the adult unit when first admitted to Napa, (2) should have received individual therapy geared toward pedophilia at Napa and Atascadero, instead of the "unfocused" group therapy actually provided, (3) should have received individual therapy in prison, and (4) showed no improvement upon his release from each institution. Both psychologists blamed the various institutions for failing to properly diagnose defendant as a paranoid/pedophiliac. Moreover, Dr. Walker thoroughly described modern treatment techniques for such diagnosis, i.e., establishing a one-on-one therapeutic relationship which overcomes the patient's extreme mistrust and denial, but compels him to confront the harm he has caused. Defense counsel also emphasized "institutional failure" as a mitigating

factor in closing argument. No prejudice occurred.

*Mickle*, 54 Cal. 3d at 193-94 (internal citations omitted).

The court finds that the state court reasonably concluded that no prejudice resulted from the trial court's exclusion of Dr. Walker's testimony since the substance of the testimony was presented to the jury via other testimony. The state court's ruling was not contrary to, and did not involve an unreasonable application of clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on this subclaim is granted.

**b) Mrs. Bailey**

In response to defense counsel's question asking whether the jury should show mercy for petitioner, Mrs. Bailey, a close family friend, testified that he should not be sentenced to death and described the effect such a sentence would have on his friends and family. After the court had informed her that she had answered the question, she continued: "Please. Please. Thank you. God bless you. I thank you. But please --." Petitioner contends that the court's exclusion of this portion of her testimony violated his constitutional rights.

On direct appeal, the state court found:

> Defendant next observes that Mrs. Bailey, a close family friend, was asked whether defendant deserved mercy. She said, "yes," and explained that imposition of the death penalty would devastated defendant's parents and the Baileys. Mrs. Bailey then began to plead for "mercy" from the witness stand, asking the court to "please" do "anything" in its power to prevent a death sentence. The court informed Mrs. Bailey that she had answered the question. She nonetheless continued her plea: "*Please, Please. Thank you. God Bless you. I thank you. But please* -." (Italics added.) The court intervened and instructed the jury to disregard the italicized portion of her testimony.
>
> As noted by defendant, a capital defendant is entitled to introduce at the penalty phase the opinions of family and friends about the appropriateness of a death sentence in his particular case. Such evidence "exemplifie[s] the feelings held toward defendant by a person with whom he [has] had a significant relationship," and bears on his overall character. (*People v. Heishman* (1988) 45 Cal.3d 147, 194.)
>
> The court did not violate this principle here. Mrs. Bailey was permitted to state that defendant should not be sentenced to death. She also described the emotional effect the sentence would have upon persons who had known him since birth. The court intervened only because Mrs. Bailey continued to beg for mercy after having been advised that she had answered the question. The court could properly strike the portion of her testimony amounting to a nonsubstantive emotional outburst.

*Mickle*, 54 Cal. 3d at 194 (internal citations omitted in part).

The court concludes that the state court's ruling was correct, and was not contrary to, and did not involve an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on this subclaim is granted.

**c) Mr. Bailey**

Mr. Bailey, Mrs. Bailey's husband testified for the defense. The trial judge sustained the prosecutor's objection when defense counsel asked Mr. Bailey how he would feel if petitioner were sentenced to death. Petitioner contends that this ruling violated his constitutional rights.

On direct appeal, the state court found:

> Defendant also claims the court erred in sustaining the prosecutor's objection when Mr. Bailey was asked whether defendant should be sentenced to death. Although such ruling was erroneous under *Heishman*, supra, 45 Cal.3d at page 194, no prejudice occurred. Mr. Bailey testified that he had fond memories of defendant and believed he deserved "help." Moreover, Mrs. Bailey indicated that she *and* her husband viewed defendant as a grandson, and would be devastated if he were sentenced to death. Thus, despite the court's ruling, the jury was fully informed that the Baileys believed defendant's life should be spared.

*Mickle*, 54 Cal. 3d at 194.

The court concludes that the state court's finding that the exclusion of Mr. Bailey's testimony did not prejudice petitioner was correct, and was not contrary to, and did not involve an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on this subclaim is granted.

**20) Claim NN**

Petitioner alleges that the trial court violated his constitutional rights when it allowed Dr. Missett, a psychiatrist testifying for the prosecution, to give opinion testimony on why petitioner should be sentenced to death, and refused to allow Dr. Haney, a psychologist testifying for the defense, to offer a similar explanation as to why he believed a death sentence was not warranted in petitioner's case. Respondent contends that the California Supreme Court reasonably rejected this claim on direct appeal.

On direct appeal, the state court addressed this claim as follows:

> Dr. Haney gave extensive direct examination testimony about defendant's

pedophilia, paranoid personality, borderline retardation, and past "inappropriate" care. On cross-examination, Dr. Haney revealed that he had testified many times in death penalty trials - always for the defense. Over defendant's relevance objection, the prosecutor asked Dr. Haney whether he was "opposed to the death penalty." He said he did not oppose it per se. When the witness was asked whether he opposed it "in this case," he said "yes." On redirect examination, defendant asked Dr. Haney to explain the last answer. The court sustained the prosecutor's relevance objection before an explanation was given.

The prosecution eventually called Dr. Missett, a psychiatrist, in rebuttal. On direct examination, he testified that defendant was a "predatory" pedophile who suffered from no neurological disease or psychosis, showed signs of an antisocial personality disorder, and resisted legitimate treatment efforts. On cross-examination, defendant asked Dr. Missett whether he was in "favor of the death penalty in this case." The court commented that the witness could answer "yes" or "no" and could "explain his answer." Defendant objected, noting that Dr. Haney had not been allowed to give a similar explanation. The court overruled the objection. Dr. Missett testified that he did not oppose the death penalty here because the defendant committed a vicious crime, had no mental disease, and rejected past treatment opportunities.

The jury was excused for the day. Defendant immediately moved for a mistrial on grounds Dr. Haney should have been allowed to explain his answer and rebut any inference of personal bias about the death penalty. The prosecutor offered to prepare a jury instruction limiting consideration of expert testimony about the death penalty to its potential bearing on bias.

Penalty phase instruction began the next morning. Before the jury entered the courtroom, defendant raised a minor objection to the prosecutor's proposed instruction concerning expert opinion on the death penalty. The court agreed to modify the instruction in the manner urged by defendant. It also offered either to strike Dr. Missett's explanation for favoring the death penalty, or to allow Dr. Haney to state the reasons why underlying his contrary opinion. The prosecution said it had no objection in either case.

After a brief recess, defendant said Dr. Haney could not be reached by phone. The court denied defendant's mistrial motion, and called the jury into the courtroom. It then instructed the jury, as promised, to "completely disregard any of the reasons Dr. Missett gave" for favoring the death penalty. [FN 41] The court also eventually read the instruction approved by both parties. It said that both experts had "testified regarding their respective views on the death penalty. This testimony was not offered for the purpose of determining whether or not the death penalty is appropriate in this case. Rather, [it] was offered and may be considered by you only for the limited purpose of determining what, if any, bias the witness has for or against the death penalty, and the extent to which such bias . . . bears on your evaluation of [the witness's] credibility. The question of which penalty to impose is a matter for your determination, and you may not take into account any opinion expressed by any expert witness as to which penalty should be imposed.

FN 41 The court also suggested that another instruction would prevent the jury from relying on expert opinion about the death penalty in determining defendant's sentence: "I will instruct you with reference to the opinions of both Dr. Haney and Dr. Missett [that] their position . . . on the death penalty should not play any [role in] what your verdict is in this case."

Defendant first argues that the court erred in allowing *any* questions about the death penalty. He views all such testimony as incompetent expert opinion on the "ultimate issue."

We disagree. Questions seeking to elicit a partisan expert's philosophical views on capital punishment might disclose some bias bearing on expert's credibility as a witness at the penalty phase. (See Evid. Code, §§ 210, 780, subd. (f).) Here, the instruction approved by both parties allowed the jury to consider expert opinion on

United States District Court
For the Northern District of California

> the death penalty only for this "limited purpose."
>
> Nevertheless, we disapprove questions posed to each expert about whether and/or why they favored or opposed death "*in this case*." (Italics added.) Detailed testimony on this issue might lead the jury to confuse expert opinion on a pertinent mental condition with an opinion on the appropriate punishment. At a minimum, direct testimony on the latter issue would not "assist" the jury in making its normative, individualized penalty determination. (See Evid. Code, § 801, subd. (a).) In future cases, trial courts should preclude examination of an expert witness on the appropriateness of death in a particular case.
>
> Nevertheless, any impropriety here was clearly harmless. Counterbalancing testimony was given by each expert - one favored death and the other opposed in "in this case." The jury was also told that such testimony could not be considered in determining the "appropriate" penalty for defendant's crimes, and that it was relevant only on the limited question of bias. Finally, the penalty jury heard overwhelming graphic evidence in aggravation and extensive conflicting evidence about defendant's psychological history and condition. There is no reasonable possibility that competing experts' predictable views on sentencing could have affected the jury's verdict.
>
> Defendant also contends the trial court erred in allowing only the prosecution's expert, Dr. Missett, to state the reasons underlying his opinion about the death penalty "in this case." However, no one-sided rehabilitation occurred. We can only assume the jury followed the court's first instruction and "*completely desregard*[ed]" this portion of Dr. Missett's testimony. (Italics added.)

*Mickle*, 54 Cal. 3d 194-97.

Respondent fails advance any arguments demonstrating that the state court decision was contrary to, or involved an involve an unreasonable application of clearly established federal law as established by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Accordingly, summary judgment on this claim is granted.

**21) Claim OO**

Petitioner alleges that the trial court should have sua sponte instructed the jury on self-defense in connection with a battery allegation involving his fight with Herbert Robinson. Robinson was the father of Sheba Robinson, whom petitioner raped and infected with gonorrhea when she was seven years old. When Robinson confronted petitioner about the rape, petitioner punched him. Petitioner testified about this incident at trial. He contends that the trial court's failure to sua sponte instruct on self-defense in connection with this uncharged offense violated his constitutional rights. Respondent argues that no federal constitutional law requires such an instruction.

Respondent is correct. Petitioner's counsel did not request a self-defense instruction, and petitioner cites no authority requiring a court to sua sponte issue such an instruction. Even state law does not require sua sponte instruction on elements of a crime or defenses at the penalty phase. *See*

*People v. Cain*, 10 Cal. 4th 1, 72-73 (1995) (sua sponte instruction on defenses was not necessary where jury had before it evidence and argument from which it could assess the degree of defendant's culpability in a prior incident). Accordingly, summary judgment on this claim is granted.

**22) Claim PP**

Petitioner alleges that the trial court violated his constitutional rights by erroneously instructing the jury that factors enumerated in Cal. Penal Code § 190.3 (d), (e), (f), (g), (h), (i), (j) and (k) are aggravating factors. He contends that California courts have repeatedly held that only factors enumerated in Cal. Penal Code §190.3 (a), (b), (c), and possibly (i), may be considered in aggravation. Respondent asserts that petitioner's claim has no merit.

The court agrees with respondent. In order to challenge a jury instruction on habeas, a petitioner must prove that the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Spivey v. Rocha*, 194 F.3d 971, 976 (9th Cir. 1999), *citing Estelle v. McGuire*, 502 U.S. 62, 72 (1991). "The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole." *Id*. The relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a manner that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).

Here, petitioner has failed to demonstrate a reasonable likelihood that the jury applied the challenged instructions in an unconstitutional manner. The trial court instructed the jury by identifying all of the statutory factors which the jury was to take into account in determining the penalty to be imposed on petitioner. The trial court stated:

> In determining which penalty is to be imposed on the defendant, you shall consider all of the evidence which has been received during any part the trial of this case, except as you may be hereafter instructed. You shall consider, take into account and be guided by the following factors, if applicable:
>
> The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstance found to be true.
>
> The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.
>
> The presence or absence of any prior felony conviction.
>
> Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.
>
> Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

United States District Court
For the Northern District of California

> Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.
>
> Whether or not the defendant acted under extreme duress or under the substantial domination of another person.
>
> Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of a mental disease or defect or the affects [sic] of intoxication.
>
> The age of defendant at the time of the crime.
>
> Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.
>
> Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime and any sympathetic or other aspect of the defendant's character or record that the defendant offers as the basis for a sentence less than death, whether or not related to the offense for which he is on trial.
>
> Now, I have read to you a list of aggravating circumstances which the law permits you to consider if you find that any of them is established by the evidence. These are the only aggravating circumstances that you may consider. You are not allowed to take into account any other facts or circumstances as the basis for deciding the death penalty would be an appropriate punishment in this case.

RT 7922-7924. As discussed below, petitioner has not demonstrated a reasonable probability that the jury understood the above instructions as directing them to consider factors enumerated in Cal. Penal Code § 190.3 (d), (e), (f), (g), (h), (i), (j) and (k) as aggravating factors.

Petitioner argues that the trial court erred when it failed to advise the jury which of the sentencing factors were aggravating, which were mitigating, or which could be either aggravating or mitigating depending on the jury's appraisal of the evidence. The United States Supreme Court has held however, that trial courts are not required to instruct the jury on its obligation to consider mitigating evidence, or on particular statutory mitigating factors. *Buchanan v. Angelone*, 522 U.S. 269, 270 (1998). A state may shape and structure a jury's consideration of mitigation as long as it does not preclude the jury from giving effect to any relevant mitigating evidence. *Id.* at 276. The jury instructions here did not foreclose the jury's consideration of any mitigating evidence.

Petitioner next argues that the trial court's use of prefatory "whether or not" language to introduce the statutory factors invited the jury to conclude that the absence of any of the evidence listed in the factors could establish an aggravating circumstance. In reviewing the language of the instructions, the court finds no reasonable likelihood that such an understanding arose among the jurors. *See Boyde*, 494 U.S. at 380.

Finally, petitioner argues that the last paragraph of the instructions misled the jurors by

identifying all of the statutory factors as aggravating. RT 7924. As a preliminary matter, the court notes that petitioner himself requested this instruction. Amended Petition at 296. As respondent points out, petitioner's argument appears to be that his own instruction required the jury to view all of the evidence presented at the penalty phase, including evidence offered by petitioner, as aggravating. The court finds no reasonable likelihood that the instructions misled the jurors in such a manner. *See Boyde*, 494 U.S. at 380.

For the above-mentioned reasons, the court finds that petitioner's claim lacks merit. Accordingly, summary judgment on claim PP is granted.

**23) Claim SS**

Petitioner alleges that the cumulative effect of multiple penalty phase errors impaired the reliability of the penalty verdict and resulted in a violation of his constitutional rights. He claims however, that this claim can not be adjudicated until all claims of penalty phase error have been addressed.

Respondent asserts that the cumulative effect of non-existent or harmless error could not have prejudiced petitioner, and that the state court reasonably considered and rejected this claim. He further claims that if an evidentiary hearing is held on petitioner's other claims, then further consideration of the cumulative error issue will be necessary at that time.

The court agrees with petitioner and defers ruling on this claim until all claims of penalty phase error have been addressed. Accordingly, summary judgment on this claim is denied without prejudice.

**24) Claim TT**

Petitioner alleges that his death sentence is unconstitutional because it is based on incomplete, inaccurate and unreliable evidence. He contends that the cumulative effect of the trial court's errors, prosecutorial misconduct, ineffective assistance of counsel, and other errors alleged in the amended petition renders the his sentence unreliable. Petitioner submits however, that this claim can not be adjudicated until all claims of error have been addressed.

The court agrees with petitioner and defers ruling on this claim until all claims of error have been addressed. Accordingly, summary judgment on this claim is denied without prejudice.

**25) Claim VV**

Petitioner alleges that the California Supreme Court denied him his right to meaningful appellate review and due process by incorrectly finding issues to be waived, mischaracterizing the record, and mischaracterizing or failing to address his appellate arguments. For example, he contends that the state court, in upholding the guilt and special circumstance verdicts, erroneously assumed that the jury concluded that petitioner's lewd act was the compulsory disrobing of Lashan K,, and that the evidence was sufficient to support such a special circumstance finding. *Mickle*, 54 Cal. 3d at 178, 180. He further contends that the record does not support the state court's conclusion that the trial court's exclusion of evidence impeaching informant Jeffrey Steel, was harmless error. *Id*. at 169. The remainder of petitioner's allegations are outlined at pages 309-315 of his Amended Petition. Respondent argues that the record demonstrates a fair and objectively reasonable judicial resolution of his claims.

The court has reviewed the record and agrees with respondent. Petitioner fails to demonstrate that the state court unreasonably applied federal law or made an unreasonable determination of the facts in its review of petitioner's claims. With respect to petitioner’s contention that the Supreme Court of California ignored some of his arguments on direct appeal, he has not pointed to any authority requiring the state court to address in its written opinion every argument contained in an appeal. Nor does the state court’s failure to address an argument in its opinion necessarily mean that it did not consider it. Furthermore, petitioner has not demonstrated that the alleged violations had a substantial and injurious effect or influence in determining the jury’s verdict. *See Brecht*, 507 U.S. at 638. Accordingly, summary judgment on this claim is granted.

**26) Claim WW**

Petitioner alleges that the California Supreme Court did not accord him a fair consideration of his automatic appeal. He contends that the state court’s high appellate affirmance rate demonstrates that it is involved in meaningless review. He argues that the state court is biased and that electoral politics rather than judicial decision-making control its practices. Furthermore, in a reiteration of allegations contained in claim VV, petitioner asserts that the California Supreme Court denied him a meaningful review of his claims by committing a host of errors. For example, he

asserts that the court misconstrued arguments contained in his briefs and erroneously concluded that claims were waived or procedurally barred. Finally, petitioner requests that this court defer ruling on claim WW so that he may request an evidentiary hearing in relation to it in subsequent briefing.

Respondent alleges that petitioner presents no evidence or caselaw in support of his claim. He asserts that in order to succeed on a claim of judicial bias, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). He claims that petitioner fails to do so. In addition, respondent contends that to establish a violation of due process stemming from judicial bias, petitioner must show that he was denied a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). He states that petitioner fails to make such a showing. Finally, with respect to petitioner's allegation that the state court did not afford him meaningful review of his appeal, he contends that the state court's decision did not constitute an unreasonable application of federal law.

The court agrees with respondent. The record demonstrates that the Supreme Court of California's review of petitioner's claims on direct appeal has been meaningful and constitutionally appropriate. Petitioner's politically-tinged complaint against the state court is specious. Petitioner has failed to demonstrate any constitutional violations stemming from the review afforded by the Supreme Court of California. Nor has he demonstrated that the alleged violations had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 638. Because this claim lacks merit, the court declines to defer ruling on it pending petitioner's request for an evidentiary hearing. Summary judgment on this claim is granted.

**27) Claim YY**

Petitioner alleges that execution by lethal injection constitutes cruel and unusual punishment in violation of the Eighth Amendment. He requests however, that the court defer ruling on this claim so that he may moves for an evidentiary hearing in relation to it in subsequent briefing. Respondent asserts that if petitioner fails to show that an evidentiary hearing on this claim is warranted, then summary judgment should be granted in his favor.

Noting that the constitutionality of California's lethal injection procedure is currently being

litigated in the case of *Morales v. Tilton*, C06-219 JF RS, the court grants petitioner's request and defers ruling on this claim pending petitioner's request for an evidentiary hearing. Summary judgment on claim YY is therefore denied without prejudice.

**28) Claim ZZ**

Petitioner asserts that the cumulative effect of the errors alleged in his petition was so prejudicial that the court should grant his petition and reverse his conviction and sentence. He contends however, that his claim of cumulative error can be adjudicated only after all claims of error have been addressed.

The court agrees with respondent and defers ruling on this claim until all claims of error have been addressed. Summary judgment on claim ZZ is therefore denied without prejudice.

**CONCLUSION**

For the reasons set forth herein, respondent's motion for summary judgment regarding claims E, F, G, I, K, L, M, N, O, Z, CC, HH, KK, MM, NN, OO, PP, VV and WW is granted. The court denies respondent's motion without prejudice with respect to claims P, BB, SS, TT and ZZ, and defers ruling on them until all relevant claims of error have been addressed. Respondent's motion regarding claims X, Y, and JJ is deemed withdrawn. The court defers ruling on claims X, Y and JJ until issues of cause and prejudice are resolved. Respondent's motion regarding claim YY is denied without prejudice. The court defers ruling on claim YY until petitioner requests an evidentiary hearing in relation to it.

The court directs the parties to submit a request to schedule a case management conference to establish a further litigation schedule. Counsel are directed to contact the courtroom deputy to suggest a specific date convenient to their and the court's calendar. The parties shall file a joint statement outlining a proposed litigation schedule fourteen days prior to the conference.

**IT IS SO ORDERED**.

**DATED: 05/14/07**

**THELTON E. HENDERSON**
**UNITED STATES DISTRICT JUDGE**