**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNY MICKLE,<br><br>         Petitioner,<br><br>  v.<br><br>KEVIN CHAPPELL, Warden of California State Prison at San Quentin<br><br>         Respondent.<br>————————————————————/ | No. C 92-2951 TEH<br><br>**ORDER REGARDING PETITIONER'S MERITS BRIEFING (28 U.S.C. § 2254(d))**<br><br>**GROUP I CLAIMS** |

## INTRODUCTION

Petitioner has filed a brief addressing the impact of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), on his petition, and discussing how his Group I claims satisfy 28 U.S.C. § 2254(d)(1) and/or § 2254(d)(2) on the basis of the record that was before the state court that adjudicated his claims on the merits. Respondent has filed an opposition and petitioner has filed a reply. Based on the record presented to date, the court finds and orders as follows.

## FACTUAL BACKGROUND

The following recitation of the factual background of this case is based on the Supreme Court of California's opinion disposing of petitioner's direct appeal, *People v. Mickle*, 54 Cal. 3d

United States District Court
For the Northern District of California

140 (1991).  The state court's factual determinations are presumed to be correct pursuant to 28 U.S.C.

§ 2254(e)(1).

In 1986, a jury in San Mateo County Superior Court sentenced petitioner to death following a conviction of first-degree murder and arson.  The jury also found true a special circumstance that he committed the murder while engaged in a lewd and lascivious act on a minor.  Evidence at trial established that in February 1983, petitioner took up residence with the victim, twelve-year-old Lashan, and her parents, Darrell Knighten and Sally Phillips, in unit ten of the Mission Bell Motel in Daly City. The motel was occupied primarily by permanent residents.

On February 24, the day of the crimes, Lashan's parents left the motel at noon and drove to Oakland to visit Darrell's grandmother.  That afternoon, Sally called petitioner to let him know that a woman who worked at Lashan's school would be dropping Lashan off at the motel.  Petitioner promised to take care of her until Sally and Darrell returned.  The school employee dropped off Lashan at 4 p.m.  At 5:30 p.m., Sally called to let petitioner know that she and Darrell would not be home for a while.

At 7:30 p.m., two rental store employees arrived to repossess the television set.  One of the employees witnessed Lashan lying on the bed, watching television.  He took the set.  At trial, he stated that both petitioner and Lashan were acting "normal."

Between 7:30 and 8:30 p.m., a motel resident saw petitioner pace back and forth between unit ten and the phone booth near the motel's office.  Petitioner was not seen again until 9:50 p.m., when he arrived at the South San Francisco home of his girlfriend, Ruthie.  At 10:30 p.m., he called the motel and asked to speak to the residents of unit ten.  After a few moments, he hung up and told Ruthie that no one was home.  Petitioner then called Lashan's parents at their relative's house.  He told Darrell that he left the motel at 7:30 and needed a key to the unit.  Darrell told him that Lashan could open the door.

Darrell and Sally were disturbed by petitioner's phone call and immediately drove home.  In the meantime, petitioner told Ruthie that he was going to the Tenderloin and left her house.

At 10:50 p.m., a restaurant employee saw flames shoot out of unit ten's bedroom window.

United States District Court
For the Northern District of California

The fire was soon extinguished.  Lashan's naked body was found on the bathroom floor.  Her back had been stabbed several times.  A motel butcher knife was found on the counter near the kitchen sink.  The front room, hallway, bathroom and kitchen had been damaged by soot, smoke and heat.

Petitioner returned to Ruthie's house at 2 a.m. and spent the night.  At 7 a.m., Ruthie saw a television report which identified petitioner as a suspect in the motel crimes.  She told him to leave.  He left and she called the police.

Petitioner called the police an hour later and said he had heard about the fire on television and wanted to discuss it.  Soon thereafter, he was taken into custody.

Petitioner was interviewed three times in custody.  He first spoke with Detectives Reese and McCarthy, pursuant to a waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and denied committing the crimes.  He said he left Lashan asleep at the motel at 8:15 p.m. and took a bus to the Tenderloin district in San Francisco.  He said he called Lashan's parents from there and then visited Ruthie.

Petitioner next spoke with his parole officer, Mr. Bandettini, pursuant to another *Miranda* waiver.  Petitioner at first denied the crimes, but then claimed not to remember whether he had stabbed Lashan and stated that he may have had sex with her.

Detectives Reese and McCarthy resumed questioning.  Petitioner stated that he could have killed Lashan, and did not know what he was doing.  He admitted having sex with her, but was not clear about when it occurred.  He initially denied setting the fire, but later stated he could have set the fire.  He said his actions were not intentional.

In describing the evening's activities, petitioner stated that he and Lashan prepared a meal, played cards and arm-wrestled.  He then started looking at her and feeling "crazy."  He paced back and forth between the front office and their unit.  At one point, he took a knife from the dirty dishes and attacked Lashan with it.  When asked how Lashan got into the bathroom, he stated that "he might have struck her one time while she was asleep," and that "she might have jumped up and tried to get away from it."

Petitioner was arrested at 2 a.m. on February 26, four hours after questioning had begun.

On February 27, Detectives Reese and McCarthy again spoke with petitioner at the Chope

1  Hospital jail ward.  Petitioner stated that he had started a fire on the murphy bed in the motel room,

2  stamped it out, and then started the fire in the bedroom, using paper each time.  When asked whether

3  Lashan had made him angry, he said "no."  Petitioner again stated that he could not remember the

4  number of stab wounds, but that Lashan had "jumped up" after the first one.  He stated that after the

5  stabbing, his hands were shaking, that blood was dripping down the knife, and that he placed it in a

6  basket.  He stated that at the time, Lashan was still breathing and calling his name.  She had a dress

7  on.

8      Petitioner also told a Chope Hospital nurse that he had killed the 12-year-old daughter of a

9  woman he was living with in a motel and had set the room on fire.

10     After his arrest, petitioner shared a jail cell with Jeffrey Steele.  Steele testified that petitioner

11 said that he had "ta[k]en some young pussy" and killed the girl because she had threatened to tell her

12 parents that he had raped her.  Petitioner identified the victim as the 12-year-old daughter of friends

13 he had been living with in a motel.  According to Steele, petitioner admitted choking and stabbing

14 the girl, but believed that he would "beat" the charges because no weapon was found and because he

15 had started a fire to conceal the crime.

16     At trial, a fire inspector testified that the fire at the motel had been intentionally set.  Two

17 beds were its points of origin and paper was used as an accelerant.  The large amount of soot was

18 indicative of a slow-burning fire.

19     Furthermore, an autopsy revealed that Lashan had died of four deep stab wounds.  Other

20 injuries suggested that she had been immobilized before the stabbing.  She survived approximately

21 30 minutes after the stabbing.  A vaginal swab revealed the presence of semen in her vagina.  No

22 signs of recent trauma to the genital area were found.  The absence of trauma was inconclusive as to

23 whether intercourse had occurred shortly before death.  Dr. Lack, the pathologist who performed the

24 autopsy, placed the time of death at approximately 9 p.m.

25

26                              **PROCEDURAL HISTORY**

27     Trial proceedings took place in San Mateo Superior Court between 1983 and 1986.  In

28 August 1990, while his direct appeal was pending, petitioner filed his first state habeas petition.  The

California Supreme Court denied it in June 1991. The California Supreme Court affirmed petitioner's conviction and sentence in August 1991. *See Mickle*, 54 Cal. 3d at 156. He filed a second state habeas petition in March 1992. It was denied in July 1992.

In April 1997, petitioner filed a federal habeas petition containing exhausted and unexhausted claims. This court stayed petitioner's federal proceedings pending completion of exhaustion proceedings in state court. Petitioner filed his third state habeas petition to exhaust unexhausted claims in December 1997. The California Supreme Court denied this petition on the merits and on procedural grounds in February 2003.

In February 2003, petitioner noticed the filing in this court of his amended petition. Respondent filed an answer in May 2003. Following a case management conference, the parties litigated issues of procedural default. In August 2004, the court issued an order finding several claims procedurally defaulted. Respondent then filed a motion for summary judgment, which the court granted with respect to numerous claims.

The parties subsequently litigated petitioner's entitlement to an evidentiary hearing. On October 1, 2009, the court granted an evidentiary hearing on numerous claims.

In April 2011, the Supreme Court issued the *Pinholster* opinion, which holds that in determining the reasonableness of a state court's ruling under § 2254(d)(1), federal courts are "limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. at 1398. In October 2011, the court decided that in light of *Pinholster*, it would analyze whether any of petitioner's claims survive review under 28 U.S.C. § 2254(d)(1) before holding an evidentiary hearing or granting discovery. Accordingly, the court vacated its order granting petitioner an evidentiary hearing and stayed any discovery litigation pending the court's determination of whether petitioner's claims overcome 28 U.S.C. § 2254(d). The instant briefing followed.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d) have separate and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is "contrary to" clearly established federal law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id.* at 413-414.  A decision is an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 414.

In *Pinholster*, the Supreme Court held that in determining the reasonableness of a state court's ruling under § 2254(d)(1), federal courts are "limited to the record that was before the state court that adjudicated the claim on the merits."  131 S. Ct. at 1398.  The court explained that "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review."  *Id.* at 1400.

In *Harrington v. Richter,* the United States Supreme Court made clear that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." 131 S. Ct. 770, 786 (2011) (internal quotation omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision;" the court must not "overlook[] arguments that would otherwise justify the state court's result . . . ." *Id.*

# DISCUSSION

## I.  Petitioner's Challenges to the Application of § 2254(d)

Petitioner contends that § 2254(d) does not preclude the grant of relief on his claims because the state court's determination that he failed to establish a prima facie case constituted both an unreasonable application of controlling federal law, as well as an unreasonable determination of the

United States District Court
For the Northern District of California

facts.  Pet'r's Br. at 10-11.  Before addressing his individual claims however, petitioner raises broad, constitutional challenges to § 2254(d) and California's state habeas procedure.  These challenges are addressed below.

### A.  Supremacy Clause

Petitioner argues that state rules which frustrate the enforcement of federal law violate the Supremacy Clause.  Petitioner relies on Supreme Court statements in a 1950 case that a "federal right cannot be defeated by the forms of local practice."  *Brown v. Western Ry. Alabama*, 338 U.S. 294, 296 (1950).  In *Brown*, the Court considered a Georgia law that required a state court considering a demurrer to construe the complaint's allegations "most strongly against the pleader." *Id.* at 295. The Supreme Court held that it would not defer to this state court practice when considering whether the complainant had made a prima facie showing of the violation of a federal law.  "[W]e cannot accept as final a state court's interpretation of allegations in a complaint asserting it."  *Id.* at 296.

Petitioner contends that in a California habeas proceeding, California law recognizes a presumption that the state court conviction is accurate.  Pet'r's Br. at 15.  He relies upon statements by the California Supreme Court that "[f]or purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; <u>defendant</u> thus must undertake the burden of overturning them."  *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) (quoting *People v. Gonzalez*, 51 Cal. 3d 1179, 1260 (1990)) (emphasis in original).  According to petitioner, if § 2254(d) were to be interpreted to require deference to a state-court adjudication based on state rules requiring a higher showing than constitutional rules, then § 2254(d) would violate the Supremacy Clause by giving the state rules determinative force.  Pet'r's Br. at 15.

For several reasons, petitioner's Supremacy Clause argument is without merit.  First, petitioner takes the quoted portion from *Duvall* out of context.  The California Supreme Court described the presumption in favor of the finality of state convictions as the reason the habeas petitioner, rather than the state, bears the burden of pleading and proof.  The state court went on to describe the requirements for a state habeas petition:  it must "state fully and with particularity the facts on which relief is sought," and it must "include copies of reasonably available documentary

evidence supporting the claim." *Duvall*, 9 Cal. 4th at 474.  Because the court "presume[s] the regularity of proceedings that resulted in a final judgment," "the burden is on the petitioner to establish grounds for release" and "[c]onlcusory allegations made without any explanation of the basis for the allegations do not warrant relief." *Id*. (internal citations omitted).  There is no question that federal law is the same.  A habeas petitioner in federal court also carries the burden of proving his claims. *Richter*, 131 S. Ct. at 784.

Second, the underpinning for petitioner's Supremacy Clause argument is that federal law does not impose such a "presumption."  That is incorrect.  Federal courts also presume that a state court conviction is final and correct. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (adopting a more lenient standard for harmless error review in habeas cases because use of *Chapman* harmless error standard "undermines the States' interest in finality and infringes upon their sovereignty over criminal matters"); *Duckworth v. Eagan*, 492 U.S. 195, 210 (1989) (recognizing difference between rules applied on direct review and those applied "to a presumptively final criminal judgment which is collaterally attacked in a federal habeas corpus proceeding") (O'Connor, J., concurring). Petitioner's argument lacks merit.

**B.  Article III**

Petitioner argues that if AEDPA requires federal court deference to "novel state-court rules for applying the Constitution," then it violates Article III of the United States Constitution by encroaching upon the federal courts' role as the final arbiter of federal law.  Pet'r's Br. at 15. Petitioner asserts that interpretation of the law and the Constitution is the primary mission of the federal judiciary, and if § 2254(d) is "read to require a federal court to act as though no constitutional violation occurred," then the statute violates Article III and the separation-of-powers doctrine.  Pet'r's Br. at 17.

Underlying petitioner's argument is the same interpretation of state law, discussed in the prior section, that *Duvall* and *Gonzalez* somehow place a higher pleading burden upon habeas petitioners than does federal law.  For the reasons discussed above, that interpretation is incorrect, leaving petitioner's Article III argument similarly without merit.

**United States District Court**
For the Northern District of California

### C.  Suspension Clause

Petitioner argues that due to the alleged deficiencies in California's capital habeas process described above, an interpretation of § 2254(d) that required deference to the California Supreme Court's ruling in this case would violate the Suspension Clause of the Constitution. Pet'r's Br. at 17. Petitioner's argument relies on the same underlying incorrect interpretation of state law described above and similarly lacks merit.

Moreover, a law acts to suspend the writ of habeas corpus in violation of the Constitution only where it explicitly bars habeas review. *Denmore v. Kim*, 538 U.S. 510, 517 (2003).  In fact, the Ninth Circuit Court of Appeals has considered, and rejected, the argument petitioner makes here.  In *Crater v. Galaza*, 491 F.3d 1119  (9th Cir. 2007), the court considered whether the deference due a state court under 28 U.S.C. § 2254(d)(1) constituted a suspension of the writ.  The court held it did not.  First, a suspension of the writ of habeas corpus occurs only when Congress "clearly and unambiguously" removes all federal habeas corpus jurisdiction.  491 F.3d at 1124 n. 5.  The AEDPA does not repeal federal habeas jurisdiction.  The court in *Crater* also rejected an argument that § 2254(d)(1) "effectively suspends the writ."  *Id*. at 1124-25.  The court pointed out that altering the standards for granting habeas relief is not the same thing as suspending the privilege of the writ.  *Id.* at 1125-26 (citing *Felker v. Turpin*, 518 U.S. 651 (1996)).  It is worth noting that petitioner does not mention *Denmore*, *Felker*, or *Crater* in his brief.  Instead, petitioner relies on *Boumediene v. Bush*, 553 U.S. 723 (2008) in which the Supreme Court struck down a statute denying aliens access to the habeas remedy.  Petitioner has made no valid argument that the AEDPA suspends the writ of habeas corpus.

### D.  Liberty Interest

Petitioner argues that the state court's summary denial of his claims violated due process. Pet'r's Br. at 35.  Under California law, if a habeas petitioner pleads "sufficient facts that, if true, would entitle him to relief," then the court will issue an order to show requiring a response from the state.  *Duvall*, 9 Cal. 4th at 475.  Issuance of an order to show cause triggers rights to conduct fact-finding in support of claims in the petition.  *Id.* at 475-77.  Petitioner asserts that this rule creates a liberty interest in the state habeas procedures.  That assertion however, cannot form the basis of a

**United States District Court**
For the Northern District of California

1   due process argument. "[A]n expectation of receiving process is not, without more, a liberty interest

2   protected by the Due Process Clause."  *Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12 (1983); *Elliott*

3   *v. Martinez*, 675 F.3d 1241, 1245-46 (10th Cir. 2012).

4   ### E.  California Supreme Court's Application of the *Strickland* Standard

5   Petitioner argues that the state court's resolution of his guilt-phase ineffective assistance

6   claims was contrary to, and an unreasonable application of clearly established federal law, as well as

7   an unreasonable determination of the facts.  Pet'r's Br. at 36.  Under *Strickland v. Washington*, 466

8   U.S. 668, 687 (1984), an ineffective assistance claim has two components: a petitioner must show

9   that counsel's performance was deficient, and that the deficiency prejudiced the defense.  Petitioner

10  argues that the state court applied the *Strickland* standard inappropriately in a number of ways that

11  affected its consideration of his Sixth Amendment claims.

12  ### a.  Inappropriate Pleading Standard

13  Petitioner's first argument is that the California Supreme Court used a higher pleading

14  standard for his ineffective assistance of counsel claims than was permitted by the Supreme Court in

15  *Strickland*.  According to petitioner, the California Supreme Court created a pleading standard in

16  *Duvall*, 9 Cal. 4th at 474 that directly contravenes a dictate of *Strickland* that "no special standards

17  ought to apply to ineffective assistance claims made in habeas proceedings."  Pet'r's Br. at 41, *citing*

18  *Strickland*, 466 U.S. at 697-98.

19  Petitioner's argument fails on several grounds.  As discussed above, petitioner takes the

20  statement in *Duvall* out of context.  The court in *Duvall* simply explained why a habeas petitioner,

21  and former criminal defendant, bears the burden of pleading and proving his claims.  The Supreme

22  Court in *Strickland* did not change that burden.  Rather, the Court recognized that the Sixth

23  Amendment standards it enunciated should apply equally whether the ineffective assistance of

24  counsel claim is raised on appeal or in a collateral attack on the judgment.  *Strickland*, 466 U.S. at

25  697-98.  Petitioner has not shown the statements in *Duvall* regarding the burden of pleading and

26  proof fly in the face of *Strickland*'s directive that no "special standards" be applied to ineffective

27  assistance of counsel claims raised in habeas proceedings.

28

Two cases cited by petitioner, *In re Crew*, 52 Cal. 4th 126 (2011) and *In re Avena*, 12 Cal. 4th 694 (1996),  to show the California Supreme Court's supposed misuse of *Strickland* are similarly unconvincing.   In each case, while the court cites to the "presumptively final judgment" language of *Duvall*, it goes on to apply the *Strickland* standards without any indication that it is using them differently than it would on appeal.  *See Crew*, 52 Cal. 4th at149-153; *Avena*, 12 Cal. 4th at 710-726.

Even if petitioner could show the California Supreme Court, in a few cases, relied upon a higher pleading standard, he has failed to show the California Supreme Court relied upon this allegedly incorrect standard in the present case.  The California Supreme Court's opinion was silent with respect to its reasoning.  Resp't's Lodged Ex. 38 (*In re Denny Mickle*, S066487 (February 25, 2003)).  This court is required to give state court decisions the "benefit of the doubt,"  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and must "presum[e] that state courts know and follow the law," *id.* (citations omitted).

### b.  Incorrect Prejudice Standard

Petitioner's next argues that the California Supreme Court applied an incorrect test for determining prejudice under *Strickland*.  He asserts that the state court wrongly applied the test articulated in  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), in which the United States Supreme Court considered whether an attorney's deficient performance rendered the defendant's trial "unreliable or the proceeding fundamentally unfair."  In 2000, the Supreme Court held that a state court erred in finding that the Court's decision in *Fretwell* modified the *Strickland* standards.  *Williams v. Taylor*, 529 U.S. 362, 391-98 (2000).  Petitioner argues that in his case, respondent in fact urged the state court to apply the *Fretwell* standard, which "eschews a focus on outcome determination -- that is, whether absent counsel's deficient performance a more favorable result would [sic] been obtained -- in favor of an inquiry directed to whether counsel's renders the result of the trial unreliable or the proceeding fundamentally unfair."  Pet'r's Br. at 45.

There is no indication here that the state court did not inform itself of the clarification set forth in *Williams* and thereafter applied the correct standard.  The California Supreme Court's opinion was silent with respect to its reasoning.  Resp't's Lodged Ex. 38 (*In re Denny Mickle*, S066487 (February 25, 2003)).  As noted above, this court is required to give state court decisions

United States District Court
For the Northern District of California

the "benefit of the doubt," *Visciotti*, 537 U.S. at 24, and must "presum[e] that state courts know and follow the law," *id.* (citations omitted).  Petitioner's argument lacks merit.

## II. Claims A1, A2, A3, A4, A5, B2, B3, C3, C4, C5, D, P, FF, LL1 and L2

Petitioner next addresses individual claims contained in his petition.  These claims are discussed below.

### A.  Ineffective Assistance Of Counsel Claims (Subclaims A1, A2, A3, A4, A5)[1]

In claim A and its subclaims, petitioner alleges that trial counsel, Phillip Barnett and Vincent O'Malley, were ineffective for failing to investigate or present available evidence relating to the fire at the Mission Bell Motel where Lashan's body was found, the time of death and other circumstances of the crime.  He asserts that his claims stated a prima facie case for relief in state court and were unreasonably denied.  Under state procedure, "the California Supreme Court's summary denial of a habeas petition on the merits reflects that court's determination that the claims made in the petition do not state a prima facie case entitling petitioner to relief." *Pinholster*, 131 S. Ct. at 1402 n. 12.

Claims of ineffective assistance of counsel are examined under *Strickland*.  As noted above, in order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 650).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the

---

[1]In the introduction to his brief, petitioner states that Group I claims include claims A6 and A13, but does not appear to subsequently address them.  This Order only addresses claims discussed in petitioner's brief.

factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  Overall, "the standard for judging counsel's representation is a most deferential one." *Richter*, 131 S. Ct. at 788.

### a. Claim A1

Petitioner claims that trial counsel were ineffective for failing to discover and present evidence that the fire that consumed the living quarters of Lashan's family at the Mission Bell Motel was fast-burning, and had been ignited approximately a half hour before its discovery at 10:50 a.m. Petitioner alleges that counsel consequently failed to establish that petitioner could not have been present at the time that the fire was set.  He argues that the state court unreasonably determined that this claim failed to state a prima facie case for relief.

Petitioner was last seen at the Mission Bell Motel at 8:30 p.m.  By 9:50, he was at the South San Francisco home of his girlfriend, Ruthie Kilgore.  At 10:50, a witness saw flames shooting out the motel's bedroom window.  After the fire was extinguished, Lashan's body was found in the bathroom.  *Mickle*, 54 Cal. 3d at 157-58.

Whether the fire was fast or slow-burning was explored at trial.  To establish how long it took the flames to appear after the fire was set, the prosecution called two expert witnesses: Daly City Fire Inspector John Christensen and State Fire Investigator McGill.  Christensen concluded that the fire had been intentionally set, had originated on two beds, and paper had been used as an accelerant.  He determined that the bedroom fire started quickly, then died down and burned slowly for one or two hours.[2]  The large amount of soot was indicative of a slow-burning fire, and the build-up of carbon monoxide and other gases blew out the windows, admitting oxygen and causing the fire to flare up before discovery.  *Id.* at 160.  McGill concluded that the fire had been intentionally set and smoldered for a minimum of two hours.  *Id.*  His opinion was supported by tests conducted by the State Bureau of Home Furnishings simulating the burn scene.  RT 1743-76.

Petitioner argues that trial counsel were inadequate for failing to adequately challenge the prosecution evidence that the fire was slow-burning.  He asserts that the defense hired two experts,

---

[2]At the scene of the fire however, Christensen initially told Daly City Police Detective Steven Hawthorne that the fire may have been fast-burning and may have started 20-25 minutes before 10:40 p.m., assuming that was the time when the clock in the bedroom stopped due to the heat.  RT 2067; Am. Pet., Ex. 1.  Trial counsel attempted to impeach Christensen's testimony by questioning Hawthorne, who acknowledged that Christensen's hypotheses were based on the possibility that a liquid accelerant had been used.  RT 2073.  Subsequent testing however, ruled out the possibility of a liquid accelerant.  RT 1600-02.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

George Simmons and Donald Morris, both of whom concluded that Christensen's testimony that the fire was slow-burning was not supported by the evidence.  Am. Pet., Ex. 152 (Decl. of George Simmons); Ex. 143 (Decl. of Donald Morris).   Petitioner argues that trial counsel were ineffective for failing to present Simmons' or Morris' opinions to the jury.  Petitioner further contends that trial counsel failed to investigate Christensen's background, and therefore failed to uncover that "less than two years before conducting the fire investigation . . . Inspector Christensen had been dismissed from the Redwood City Fire Department for a variety of offenses including dishonesty in the falsification of time records."  Pet'r's Br. at 53.  Finally, petitioner alleges that had trial counsel conducted an adequate investigation, they would have been able to obtain additional expert opinions challenging not only the validity of Inspector Christensen's opinion, but also the opinion of State Fire Investigator McGill regarding the inadequacies of the Bureau of Home Furnishings' tests.

Respondent counters that by failing to provide a declaration from trial counsel explaining why the defense fire experts were not called at trial, petitioner fails to overcome the strong presumption that counsel's conduct was reasonable.  *Strickland*, 466 U.S. at 689.  He asserts that trial counsel could have reasonably believed that it was sufficient to impeach Christensen by asking him about his initial statement to Daly City Police Detective Steven Hawthorne that the fire was fast-burning, and further underscoring Christensen's changed view by introducing a letter from the prosecutor asking Christensen to clarify his opinion regarding the range of time during which the fire could have started.  Respondent argues that trial counsel may also have reasonably believed that his cross-examination of the prosecution's fire experts would allow him to effectively argue their unreliability to the jury.  Finally, he contends that petitioner fails to cite authority suggesting that a diligent attorney is required to research the personnel history of public safety officers such as Christensen when they testify regarding their investigative findings.

Petitioner fails to overcome the "strong" presumption that counsel's conduct was reasonable, *Strickland*, 466 U.S. at 689, a presumption that is "doubly deferential" when conducted through the lens of federal habeas review.  *Yardborough v. Gentry*, 540 U.S. 1, 6 (2003).  For the reasons cited by respondent, it is at least arguable that a reasonable attorney would have foregone the investigation and presentation of evidence now cited by petitioner.  *Richter*, 131 S. Ct. at 788 ("question is

whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom.")  As noted by the Supreme Court, *Strickland* does not require for every prosecution expert an equal and opposite expert from the defense, and in many instances, cross-examination may be sufficient to expose defects in an expert's presentation.  *Id*. at 791.  Here, trial counsel vigorously cross-examined the prosecutor's fire expert, RT 1575-97, attempted to impeach him by introducing into evidence a letter from the prosecutor asking Christensen to clarify his changed opinion regarding the duration of the fire, RT1598, and attempted to undermine his reliability in closing argument.  RT 2221-30.  It was within the bounds of "reasonable judicial determination" for the state court to conclude that trial counsel could follow a trial strategy that did not include the presentation of Morris' and Simmons' testimony, or the presentation of additional expert testimony challenging the opinions of Inspector Christensen or State Fire Investigator McGill.  *Richter*, 131 S. Ct. at 789.  Furthermore, petitioner fails to establish that a diligent attorney was required to inquire into the personnel history of a testifying officer such as Christensen.

In sum, on the basis of the state court record alone, the Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct.  *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim A1 lacks merit and is denied.

### b. Claim A2

Petitioner alleges that his counsel were ineffective for failing to investigate scientific evidence that would have demonstrated that the coroner's estimate of the time of Lashan's death was erroneous, and that his reconstruction of the crime was inconsistent with objectively established facts.  The prosecution's pathologist, Dr. Arthur Lack, who performed an autopsy on Lashan, testified that she died at approximately 9:00 p.m. on February 24, that she had been stabbed approximately 30 minutes prior to death, and that soot accumulated in her lungs and carbon monoxide gathered in her blood during this time period.  He further concluded that based on the soot that collected on Lashan's feet, she had been stabbed in one location and moved herself to another location where she died.  Petitioner argues that counsel were ineffective for failing to discover that

**United States District Court**
For the Northern District of California

Dr. Lack's conclusions were scientifically unsubstantiated.  In support of his contention, he offers

the declaration of Thomas Rogers, M.D., who concludes that there is no scientific basis for Dr.

Lack's opinion.  Am. Pet., Ex. 150.

As respondent points out, petitioner fails to rule out a tactical basis for trial counsel's

decision not to contest Dr. Lack's findings before the jury.  *Strickland* permits counsel to make

reasonable decisions that make particular investigations unnecessary.  *See Richter*, 131 S. Ct. at 788.

Counsel could have reasonably believed that the Dr. Lack's opinion was sound, or that since it was,

in part, premised on the understanding that the fire was slow-burning as determined by Inspector

Christensen, any doubts the jury had about Christensen's opinion would affect their acceptance of

Dr. Lack's conclusions.  More importantly, in light of the weight of the incriminating evidence

against petitioner, including his repeated confessions, a challenge to any medical uncertainty as to

the exact time of Lashan K.'s death is not reasonably likely to have produced a different outcome at

trial.  *Strickland*, 466 U.S. at 696.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision

correct.  *Richter*, 131 S. Ct. at 786.  Based on the state court record, the Supreme Court of California

may have reasonably determined that petitioner's allegations failed to establish a prima facie case for

relief.  Accordingly, claim A2 lacks merit and is denied.

**c. Claim A3**

Petitioner alleges that counsel were ineffective for failing to investigate and discover

information regarding Lashan's family life that would have demonstrated that testimony offered at

trial was not consistent with the truth.  Petitioner alleges that at trial, Lashan's mother, Sally Phillips,

suggested that the family maintained a quiet, modest lifestyle with little social involvement, that

Lashan was extremely modest and would never undress in front of anyone.  Petitioner asserts that

had counsel conducted a reasonable investigation, they would have discovered that the Phillips-

Knighten family in fact lived a bizarre lifestyle with a great deal of social interaction, and that

Lashan was frequently left alone.  In support of his claim, petitioner offers declarations from

neighbors and friends establishing that Lashan's step-father, Darrell Knighten, dressed in women's

clothing and frequented gay nightclubs, that Darrell and Sally had parties where people drank and

used drugs, that Lashan told her neighbor that Darrell was the father of her 15-year-old sister's baby and that she was afraid and uncomfortable with him. Am. Pet., Exs. 124, 125, 126, 127 & 129.

Petitioner's further alleges that counsel were ineffective for failing to discover that Lashan had been sexually active for at least six months prior to her death, and had sexual intercourse with someone other than petitioner within 24 hours prior to her death. Testimony from a pathologist at trial established Lashan had a "mature" vagina whose hymen had been ruptured several months before her murder. Furthermore, swabs taken from her vagina revealed the presence of semen containing both A and B antigens, and had most likely been deposited between 18 and 24 hours prior to her death. Petitioner, whose blood type is B, could not have been the source of the A antigens. He alleges that trial counsel failed to investigate who could have contributed the A or AB antigens, and thus failed to discover who could have engaged in sexual activity with Lashan within 24 hours of her death. Petitioner argues that counsel's deficiency also undermined his defense to the special circumstance of lewd and lascivious conduct.

Petitioner's allegation that counsel were ineffective for failing to rebut evidence that Lashan lived a modest, quiet lifestyle is unfounded. The testimony petitioner cites in support of his claim, does not, in fact, establish that the family maintained such a lifestyle. Lashan's mother merely testified that no one in the household was expecting any visitors on the evening of February 24, and that none of her friends or family knew that they were staying at the Mission Bell Motel. RT 1216-17. Counsel were not ineffective for failing to rebut non-existent evidence. Furthermore, to the extent that petitioner suggests that the family's lifestyle permitted easy access to Lashan and raised questions of third-party culpability, any evidence of such culpability would have had to be accompanied, under state law, with "direct or circumstantial evidence linking a third person to the actual perpetration of the crime." *People v. Hall*, 41 Cal. 3d 826, 833 (1986); *see also Walters v. McCormick*, 122 F.3d 1172, 1177 (9th Cir. 1997) ("evidence of third party culpability is not admissible . . . [unless it is] coupled with substantial evidence tending to directly connect that person with the actual commission of the offense.") Petitioner could not make such a showing as no evidence connected any person other than him to Lashan's death. The state court's denial of petitioner's claim was not objectively unreasonable.

United States District Court
For the Northern District of California

17

United States District Court
For the Northern District of California

Petitioner's allegation that counsel were ineffective for failing to discover that Lashan had been sexually active for at least six months, and had sexual intercourse with someone other than petitioner within 24 prior to her death is also unavailing.  As noted above, expert testimony at trial established that Lashan had a ruptured hymen, and that semen was deposited in her vagina probably 18-24 hours prior to her death by a donor who had an AB blood type, or in a statistically less probable scenario, two different donors who had A and B blood types respectively.  Petitioner's blood type is B.  RT 1120-21, 1656, 1664-66, 1671, 1678, 1684-87.  Expert evidence also established that in 25-30% of sexual assault cases, no ejaculation takes place.  RT 1676.  In addressing this evidence, the prosecutor conceded that sexual intercourse most likely took place 24 hours before Lashan's death, and that someone other that petitioner molested her at that time.  RT 2192-93.  In response, in closing argument, petitioner's counsel dwelled on the undisputed evidence of Lashan's prior sexual intercourse and the existence of AB-semen in her vagina as not reconcilable with petitioner being her molester and killer.  RT 2217-21.  The prosecutor responded by acknowledging that the semen was not the semen of the murderer, and stated: "[Y]ou've got to realize the temptation to want to believe that this child was only molested once in her life. Obviously, it happened a lot more than that, and it happened to her within 24 hours of the later molest and murder."  RT 2247.

Petitioner alleges that counsel failed to do what the record shows was done.  As noted above, trial counsel did focus on Lashan's undisputed prior sexual activity and the presence of third-party semen.  The jury was, in fact, fully aware of the circumstances petitioner now claims should have been raised at trial.  Moreover, petitioner himself admitted having "had sex" with Lashan after he stabbed her, and the evidence showed that he killed her while engaging in a lewd act, whether by intercourse without ejaculation, or by having the child  disrobe to gratify his lust[3].  RT 2189-91. Petitioner fails to establish that counsel was ineffective.

Based on the above, the Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct. *Richter*, 131 S. Ct. at 786.  Based on the state court record, the

---

[3]There was uncontradicted testimony that Lashan was modest and not inclined to undress in front of anyone. RT 1217-18.  That she had been a victim of sexual abuse by persons other than petitioner did not make her any less modest.

**United States District Court**
For the Northern District of California

Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim A3 lacks merit and is denied.

### d. Claim A4

Petitioner alleges that counsel were ineffective for failing to investigate evidence relating to Darrell, Lashan's step-father, and therefore failed to discover that Darrell had a criminal record involving narcotics offenses, robbery, prostitution, assault and use of a knife.  Petitioner contends that counsel never investigated Darrell's alibi evidence that he had been with Sally, Lashan's mother, on the eve of the murder, and failed to consider his involvement in her death.

Petitioner's counsel were not ineffective for failing to discover and present irrelevant evidence.  None of the evidence cited by petitioner directly connects Darrell with Lashan's death, and may have been inadmissible under state law.  *See Hall*, 41 Cal. 3d at 833.   Moreover, Sally testified that she and Darrell had taken her mother to the hospital on the night of the murder.  Petitioner cites no compelling reason to doubt her testimony establishing his alibi.  Furthermore, to the extent that he suggests that Darrell could have been the source of the AB-semen found in Lashan's body, given that the prosecution conceded that Lashan had been molested by someone other than petitioner within 24 hours of her death, the prejudice from failing to investigate this matter is not apparent.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct.  *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.   Accordingly, claim A4 lacks merit and is denied.

### e. Claim A5

Petitioner contends that trial counsel were ineffective for failing to investigate evidence underlying the conduct that formed the basis of the jury's special circumstance finding that he committed the murder while engaged in a lewd and lascivious act on a minor.  In particular, he asserts that counsel failed to demonstrate that he did not compel Lashan to disrobe.

At trial, the prosecutor argued that there had been either sexual intercourse or a disrobing of Lashan for lewd and lascivious purposes.  Her naked body was found in the bathroom.  The jury

ultimately returned a finding that the lewd and lascivious act underlying the special circumstance was "witnessed by the victim['] nudity and obvious use of force." CT 416. Petitioner however, argues that Lashan K. was killed in the bathroom after taking off her clothes, possibly to take a shower.

The record does not support petitioner's allegations. Bloodstains were found around the bottom of the bathroom doorway and on a lower drawer of a hallway dresser across form the bathroom where Lashan's naked body was found. RT 1024-26, 1056-58. Lashan's feet were coated with blood, which in turn contained soot and paint flecks, indicating that after being stabbed, she had stood and moved during the fire. RT 1092-93. This evidence suggests that Lashan was stabbed and undressed elsewhere, and she moved to the bathroom where she died. Petitioner has not demonstrated that any failure by trial counsel to rebut this inference constituted deficient performance, or that it was prejudicial.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct. *Richter*, 131 S. Ct. at 786. The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.   Accordingly, claim A5 lacks merit and is denied.

## B. *Brady* Violations (Claims B2 and B3)

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine

confidence in the outcome of the trial.'" *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

In sum, for a *Brady* claim to succeed, petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued). *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *cf. Towery v. Schriro*, 641 F.3d 300, 309-10 (9th Cir. 2010) (no habeas relief on *Brady* claim under § 2254 where state court reasonably determined "beyond a reasonable doubt that the prosecutor's misconduct did not affect the verdict").

### a. Claim B2

Petitioner alleges that the prosecution knew, or should have known, that less than two years prior to the investigation in this case, Daly City Fire Inspector John Christensen had been discharged from his position as fire inspector with the Redwood City Fire Department following accusations of dishonesty and the falsification of time records, but failed to disclose this information to the defense in violation of *Brady*. Petitioner asserts that this information was material because Christensen's credibility was critical to the prosecutor's case. As noted in the discussion of claim A1 above, Christensen testified at trial that the fire was slow-burning, even though at the scene of the fire, he initially told Daly City Police Detective Steven Hawthorne that the fire may have been fast-burning based on the possibility that a liquid accelerant had been used. Subsequent testing however, ruled out the possibility of a liquid accelerant.

Petitioner fails to establish a *Brady* violation. Petitioner fails to demonstrate that if Christensen had been impeached with evidence of his discharge, there is a reasonable probability that the result of the proceeding would have been different. *Cone*, 556 U.S. at 469-70. There was ample evidence of petitioner's guilt, including his access to Lashan, the testimony of jailhouse informant, Jeffrey Steele, as well as petitioner's own inculpatory statements. Petitioner fails to satisfy the materiality prong of *Brady*.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct. *Richter*, 131 S. Ct. at 786. The Supreme Court of California may have reasonably

**United States District Court**
For the Northern District of California

21

determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim B2 lacks merit and is denied.

**b.  Claim B3**

Petitioner contends that the prosecution failed to disclose Lashan's step-father, Darrell's criminal record in violation of *Brady*.  He asserts that evidence of Darrell's criminal past would have impeached his credibility and would have led trial counsel to investigate his possible culpability for the charged crime.

Petitioner again fails to establish a *Brady* violation.  Assuming that the prosecution had knowledge of Darrell's criminal record and should have disclosed it, petitioner fails to establish that this evidence, if presented at trial, would have "put the case is such different light as to undermine confidence in the verdict."  *Kyles*, 514 U.S. at 435.  Petitioner does not cite to any evidence that links Darrell to the charged crime - he merely cites Darrell's "possible responsibility."  Pet'r's Br. at 74.  The mere possibility that undisclosed information might have helped the defense does not establish materiality in the constitutional sense.  *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).  The state court could reasonably have determined that Darrell's criminal record was not material.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct.  *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim B3 lacks merit and is denied.

**C.  *Napue* Violations (Claims C3, C4 and C5)**

Under *Napue v. Illinois*, 360 U.S. 264 (1959)*,* it is unconstitutional for the state to knowingly use false or perjured testimony against a defendant to obtain a conviction.  "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103 (footnote omitted).  To demonstrate a *Napue* violation, petitioner must show: 1) the evidence in question was false; 2) the prosecution knew or should have known it was false; and 3) the false evidence was material.  *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005).

United States District Court
For the Northern District of California

### a)  Claim C3

Petitioner argues that the prosecution presented the false testimony of Daly City Fire Inspector John Christensen in violation of *Napue*.  Christensen testified that the fire was slow-burning.

Petitioner's *Napue* claim is unavailing because he fails demonstrate that Christensen's testimony was false.  As discussed above, at the scene of the fire, Christensen initially told Daly City Police Detective Steven Hawthorne that the fire may have been fast-burning.  RT 2067.  Christensen's hypothesis was based on the possibility that a liquid accelerant had been used.  RT 2073.  Subsequent testing however, ruled out the possibility of a liquid accelerant.  RT 1600-02.  Christensen subsequently changed his opinion and testified that the fire was slow-burning.  His opinion was factually-based.[4]  Although Christensen's opinion conflicts with the opinion of petitioner's current experts, a "disagreement in expert opinion" does not establish that expert testimony was false.  *Harris v. Vasquez*, 949 F. 2d 1497, 1524 (9th Cir. 1990) (finding that the fact that petitioner's current experts believed his doctor at trial rendered an improper psychiatric diagnosis due to an allegedly inadequate examination does not establish that any testimony was false).

Because petitioner cannot establish the threshold requirement under *Napue* that the evidence in question was false, he cannot demonstrate the additional requirements that the prosecutor knew or should have known the evidence was false, or that the false evidence was material.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision correct.  *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim C3 lacks merit and is denied.

### b)  Claim C4

Petitioner alleges that the prosecutor presented Dr. Lack's false testimony as to the time of Lashan's death in violation of *Napue*.  Dr.  Lack testified that the time of death was 9:00 p.m., give

---

[4]Petitioner speculates that Christensen changed his opinion after he received a letter from the prosecutor requesting clarification of his views.  He asserts that Christensen was vulnerable because he had recently been discharged from his position as fire inspector for the Redwood City Fire Department.  Such speculation does not establish that Christensen's testimony was false.

23

or take a half hour, and that the actual stabbing occurred a half hour before death.  RT 1120.

Petitioner asserts that because Dr. Lack's estimate was largely based on Christensen's false opinion

regarding the start-time and duration of the fire, it follows that Dr. Lack's testimony was also false.

As discussed above, petitioner has failed to establish that Christensen's testimony was false.

He consequently fails to establish that Dr. Lack's testimony, which relied on Christensen's opinion,

was also false.  Petitioner's allegation lacks merit.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision

correct.  *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably

determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly,

claim C4 lacks merit and is denied.

### c)  Claim C5

Petitioner alleges that the prosecution presented Lashan's mother, Sally's false testimony

regarding her family's lifestyle in violation of *Napue*.  He asserts that Sally testified that the family

lived quietly at the Mission Bell Motel, that no one but their close family knew where they were, and

that Lashan was a private person who would never undress in front of anyone.  Petitioner asserts that

in actual fact, the Knighten family was "extremely active socially and sexually."  Pet'r's Br. at 83.

Petitioner mischaracterizes Lashan's mother's testimony.  As noted in the discussion of claim

A3 above, Lashan's mother testified that no one in the household was expecting any visitors on the

evening of February 24, and that none of her friends or family knew that they were staying at the

Mission Bell Motel.  RT 1216-17.  She did not make statements about the family's social life.

Petitioner also fails to present evidence discrediting the view that Lashan was a modest child who

would not undress in front of anyone.  The prosecution's concession that she was sexually abused

prior to her death does not contradict this view either.  Petitioner fails to establish that the

prosecution presented false evidence in violation of *Napue*.

The Court cannot conclude that no "fairminded jurist[]"could find the state court's decision

correct.  *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably

determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly,

claim C5 lacks merit and is denied.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.  Claim D

Petitioner alleges that the California Supreme Court's denial of his claim alleging that insufficient evidence supported the special circumstance finding was unreasonable.  The jury found true the special circumstance that petitioner committed the murder while engaged in a lewd and lascivious act on a minor.  They identified the lewd or lascivious act to be "witnessed by the victims [sic] nudity and obvious use of force."  RT 2257.

The California Supreme Court denied this claim on the merits on direct appeal.  The court stated:

> Defendant also claims there was insufficient evidence to support the special circumstance finding on a "disrobing" theory.  We disagree.  The evidence established that 12-year-old Lashan was extremely modest, that she never relaxed in the nude at home, and that she undressed at night only under parental compulsion.  Nothing unusual was noticed about her appearance when she was last seen alive watching television at 7:30 p.m.  Thus, the jury could reasonably infer that Lashan was clothed an hour later, when the stabbing most likely occurred.  However, her body was found in the nude and bore signs of a violent struggle or assault.  A rational trier of fact could conclude that, at a minimum, the murder occurred during a sexually motivated, compulsory act of disrobing.

*Mickle*, 54 Cal. 3d 140, 178 (1991) (internal citations omitted.)

The critical inquiry on review of a claim challenging the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v Virginia*, 443 US 307, 318-19 (1979).  The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings . . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction).  "[T]he only question under *Jackson* is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.    Here, the jury was instructed that it could find the special circumstance to be true if the murder was committed while "the defendant was engaged in the commission of a lewd and lascivious act." *Mickle*, 54 Cal. 3d at 177 n. 19.  Under California law, disrobing a child with the specific intent to arouse, appeal to or gratify lust, passions or sexual desires constitutes a lewd

act. *Id*. at 176.  Lashan's body was found naked and bore signs of a physical struggle.  Viewed in the light most favorable to the prosecution, this evidence was sufficient for a rational trier of fact to find that Lashan was murdered during the commission of a lewd act.  The state court reasonably concluded that the record sufficiently supported the jury's special circumstance finding.

Petitioner fails to demonstrate that the state court decision constituted an unreasonable application of Supreme Court precedent.  Accordingly, claim D lacks merit and is denied.

**F.  Claim P**

In claim P, petitioner alleges that the cumulative effect of guilt-phase errors created prejudice and compel the reversal of his conviction.  The parties recognize however, that not all guilt-phase claims have been briefed yet and request that ruling on claim P be deferred.

Pursuant to the parties' request,  the Court defers ruling on claim P until after all guilt phase claims are briefed.

**G.  Claim FF**

In claim FF, petitioner repeats the allegations raised in his guilt-phase *Brady* and *Napue* claims (claims B2, B3, C3, C4 and C5), but with respect to the penalty phase of trial.  Because a new jury was impaneled for the penalty phase, the prosecutor again presented the testimony of witnesses John Christensen, Dr. Lack, Darrell Knighten and Sally Phillips.  Petitioner asserts that the testimony of these witnesses was false and/or unreliable in the penalty phase for the same reasons that their testimony was false and/or unreliable in the guilt phase of the trial.  In addition, he contends that Dr. Lack falsely testified that the evidence suggested that a sexual act was perpetrated by petitioner on Lashan, that there was evidence of garroting, and that the evidence suggested that he stabbed her while she was lying on the bed, then turned her over and stabbed her twice again.  Pet'r's Br. at 92.  Petitioner alleges that the presentation of the testimony of these witnesses violated *Brady* and *Napue*.

Petitioner's penalty-phase allegations fail for the same reasons that his guilt-phase allegations fail, as discussed in claims B2, B3, C3, C4 and C5 above.  Additionally, to the extent that Dr. Lack's testimony regarding the circumstances of the crime conflicts with the opinion of petitioner's current

**United States District Court**
For the Northern District of California

experts, as noted above, "disagreement in expert opinion" does not establish that expert testimony was false. *Harris*, 949 F. 2d at 1524. Petitioner fails to establish *Brady* and *Napue* violations.

The Court cannot conclude that no "fairminded jurist[]" could find the state court's decision correct. *Richter*, 131 S. Ct. at 786. The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief. Accordingly, claim FF lacks merit and is denied.

### H. Claim LL1

In claim LL1, petitioner alleges that trial counsel was ineffective for failing to investigate and request jury instructions on lingering doubt in the penalty phase of trial. He argues that substantial evidence cast doubt on petitioner's guilt of first degree murder and on the special circumstance finding. In particular, he alleges that evidence that petitioner was not at the scene of the crime when the fire was set, that numerous other persons with motive and opportunity had access to Lashan K., that Lashan K. had been sexually active for more than 6 months and had sexual intercourse with someone other than petitioner within 24 hours of her death, as well as other evidence, all cast doubt on his guilt.

Petitioner's allegations lack merit. As a preliminary matter, petitioner does not have a constitutional right to a lingering doubt instruction. *Franklin v. Lynaugh*, 487 U.S. 164, 172-74 (1988). Furthermore, the decision to forego focus on lingering doubt is a trial tactic subject to double-deference under federal habeas law. *See People v. Hawkins*, 10 Cal. 4th 920, 968 (1995), *abrogated on other grounds,  People v. Lasko*, 23 Cal. 4th 101 (2000); *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). At the penalty phase of petitioner's trial, the jury received evidence not only of his confessions, but also of his history of prior sexual assaults, including his rape and sodomy of a 7-year old, rape of another 7-year old and rape and impregnation of a 13-year old. Given the aggravating evidence of petitioner's history of sexual molestation, trial counsel may have reasonably chosen to focus on other aspects of petitioner's background in order to move the jury toward leniency rather than pursue a lingering doubt theme. Trial counsel's lack of focus on lingering doubt was not unreasonable.

The Court cannot conclude that no "fairminded jurist[]" could find the state court's decision correct. *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim LL1 lacks merit and is denied.

### I.  Claim LL2

Petitioner alleges that trial counsel was ineffective for failing to object to or present expert opinion to counter Dr. Lack's penalty phase testimony.  Dr. Lack testified that the evidence suggested a sexual crime, that there was evidence of strangulation by means of a necklace and that the fatal stab wounds were administered while Lashan K. was lying on her stomach and then turned over, either by herself or by the perpetrator of the crime.  Petitioner alleges that Dr. Lack's unrebutted testimony wrongly established that the murder was committed as part of a sexual act.  Dr. Lack did not suggest that the assault was sexual in nature when he testified at the guilt phase.  In support of his claim, petitioner offers the declaration of Dr. Thomas Rogers, who opines that there was no scientific basis for Dr. Lack's conclusions.  Am. Pet., Ex. 150.

To the extent that Dr. Lack's testimony confirmed that the murder occurred as part of a sexual act against the victim, that fact had already been established beyond a reasonable fact at the guilt phase of trial when the jury found true the special circumstance that Lashan K. was murdered during the commission of a lewd and lascivious act.  Trial counsel may have reasonably decided to forego challenging a fact that had already been established in the guilt phase -- even without Dr. Lack's testimony regarding the sexual nature of the crime at the guilt phase.  Petitioner fails to establish that counsel was ineffective in this regard.

The Court cannot conclude that no "fairminded jurist[]" could find the state court's decision correct. *Richter*, 131 S. Ct. at 786.  The Supreme Court of California may have reasonably determined that petitioner's allegations failed to establish a prima facie case for relief.  Accordingly, claim LL2 lacks merit and is denied.

### J.  Factual Determination Under § 2254(d)(2)

Throughout his motion, petitioner alleges that the state court's rejection of his claims was based on an unreasonable determination of the facts within the meaning of § 2254(d)(2).  The state

United States District Court
For the Northern District of California

court did not hold an evidentiary hearing and denied his claims in a summary order.  Petitioner asserts that to the extent that the state court made factual determinations or resolved factual disputes without a hearing, then its decision involved an unreasonable determination of the facts.  Pet'r's brief at 64-65.

Petitioner's argument is unavailing.  The state court made no explicit factual findings in denying the merits of petitioner's habeas claims.  While factual findings were implicit in the state court's denial, petitioner can not establish a violation of § 2254(d)(2) based on a generalized grievance that the state court must have resolved factual disputes without a hearing.  Rather, petitioner must establish that the state court unreasonably determined the facts because no other reasonable explanation can account for the state court decision regarding a particular claim.  *Richter*, 131 S. Ct. at 784.  Petitioner has failed to make this showing with respect to his claims.

## CONCLUSION

For the above-mentioned reasons, claims A1, A2, A3, A4, A5, B2, B3, C3, C4, C5, D and FF are denied.  The court defers ruling on claim P until after all guilt phase claims are briefed.  The parties shall proceed to brief  Group II claims as follows:

1)  Within 90 days of the date of this Order, petitioner shall file a motion explaining why the Supreme Court of California's denial of Group II claims (A10, A11, A12, B1, C1, H, DD, EE and LL4) was "contrary to, or involved and unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings."  28 U.S.C. § 2254(d).  Pursuant to *Pinholster*, 131 S. Ct. at 1398, petitioner's brief shall be based on the record that was before the state court that adjudicated the claims on the merits.

2)  Within 60 days of the date of service of petitioner's brief, respondent shall file an opposition.

3)  Within 30 days of the  date of service of the opposition, petitioner shall file a reply.

4)  A briefing schedule for litigating the remaining Group III claims will be set after the court rules on the merits of petitioner's Group II claims.

**IT IS SO ORDERED.**

DATED:  08/04/2014

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE